UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- X

INDRAWATIE SHIWBODH,                    :
                                        :
                 Plaintiff,             :
                                        :
          - against -                   :        12 CV 01706 (AVC)
                                        :
                                        :        **JOINT TRIAL MEMORANDUM**
CARIBBEAN AIRLINES LIMITED,             :
                                        :
                 Defendant.             :
                                        :
                                        :
---------------------------------------------------------------- X

In accordance with the Court's trial procedures and Order dated April 28, 2015,

the parties hereby submit the following Joint Trial Memorandum:

## I.  Trial Counsel

### A.  <u>Plaintiff's Counsel</u>

Curtis B. Miner (*pro hac vice*)
Colson Hicks Edison
255 Alhambra Circle, PH
Coral Gables, FL 33134
Email: curt@colson.com
Telephone: (305) 476-7400
Facsimile: (305) 476-7444

Steven D. Jacobs
Jacobs & Jacobs, LLC
700 State Street, 3rd Floor
New Haven, CT 06511
Email: steve@jacobs-jacobs.com
Telephone: (203) 777-2300
Facsimile: (203) 773-8052

### B.  <u>Defendant's Counsel</u>

John Maggio (*pro hac vice*)
Condon & Forsyth LLP
7 Times Square
New York, New York 10036

Email: jmaggio@condonlaw.com
Telephone: (212) 894-6792
Facsimile: (212) 370-4453

Vincent Michael Marino
Cohen and Wolf, P.C.
657 Orange Center Road
Orange, CT 06477
Email: vmarino@cohenandwolf.com
Telephone: (203) 974-6450
Facsimile: (203) 337-5582

## II.    Jurisdiction

### A.    <u>Subject Matter Jurisdiction</u>

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because plaintiff's claims are governed by a treaty of the United States known as the Convention for the Unification of Certain Rules Relating to International Carriage by Air, concluded at Montreal, Canada on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, 1999 WL 33292734 (1999) ("Montreal Convention") and the rights of the parties are governed by the provisions of the Montreal Convention. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under . . . treaties of the United States."). The Montreal Convention applies to this action because Plaintiff Indrawatie Shiwbodh was traveling pursuant to a contract of transportation (i.e. passenger ticket), which provided for international round-trip air transportation between John F. Kennedy International Airport in New York and Cheddi Jagan International Airport in Georgetown, Guyana. *See* Montreal Convention, Art. 1. Because the Convention applies, it governs the rights and liabilities of the parties. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 162 (1999).

Subject matter jurisdiction also exists under 28 U.S.C. § 1330 (Actions Against Foreign States) because Defendant Caribbean Airlines is a "foreign state" as defined in 28 U.S.C. § 1603.

## III.   Non-Jury Trial

Defendant is a "foreign state" as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and under 28 U.S.C. § 1330, which creates subject matter jurisdiction in district courts for actions against foreign states, it is mandated that all such actions are to be tried non-jury. *See* U.S.C. § 1330 and § 1441(d).

## IV.   Nature of the Case

This is an action by Plaintiff Indrawatie Shiwbodh against Caribbean Airlines for damages arising when Caribbean Airlines Flight BW523 overran the runway upon landing at Cheddi Jagan International Airport in Georgetown, Guyana on July 30, 2011. The action arises out of international transportation by air and is therefore governed by the provisions of the Montreal Convention, a treaty of the United States. Accordingly, the rights and liabilities of the parties are governed by the Convention.

### A.   <u>Plaintiff</u>

When Caribbean Airlines Flight BW523 overran the airport at Cheddi Jagan International Airport, the impact was so violent that it caused the metal fuselage to break in two parts. Overhead bins collapsed into the passenger compartment, and passengers were slammed into the seatbacks in front of them and subjected to extreme forces. In the chaos and panic that followed, Indrawatie Shiwbodh, who was travelling with her husband and daughter, made her way onto one of the wings and, in the darkness and

without aid from flight attendants or cabin crew, was forced to jump a substantial distance to the rocky ground below to escape from the wreckage.

According to Article 17 of the Montreal Convention, Caribbean Airlines is strictly liable for certain damages Indrawatie Shiwbodh suffered as a result of the "accident." Caribbean Airlines concedes that the July 30, 2011 overrun incident satisfies the "accident" requirement of Article 17 of the Montreal Convention.  Accordingly, the issue to be addressed at trial is whether plaintiff's bodily injuries and related mental trauma and suffering were proximately caused by the "accident" and the amount of her damages.

Plaintiff will demonstrate at trial that she suffered substantial bodily injuries, including trauma to her head that resulted in a laceration requiring multiple stitches to be closed and persistent headaches, aggravation of low back pain that would eventually require multiple epidural injections, and most significantly injuries to her right knee and ankle that would also require multiple injections of painkillers and eventually arthroscopic surgery of her right ankle.   She has also suffered substantial mental trauma and distress flowing from these bodily injuries.  And, she has suffered extraordinary financial damage as a result of being unable to continue with her job at Covidien, a manual labor job on an assembly line hat required a level of physical stamina that she could no longer maintain after the accident.

**B.**   **Defendant**

According to Article 17 of the Montreal Convention, Indrawatie Shiwbodh can only recover damages if she establishes that an "accident" caused her injuries.  Although the Convention does not define "accident," the Supreme Court has explained that an "accident" is "an unexpected or unusual event or happening that is external to the

passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985).  Caribbean Airlines concedes that the July 30, 2011 overrun incident satisfies the "accident" requirement of Article 17 of the Montreal Convention.  Accordingly, the issue to be addressed at trial is whether plaintiff's alleged bodily injuries were proximately caused by the "accident."  *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 172-173 (4th Cir. 1993); *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 659 (S.D.N.Y. 2001) (plaintiff must show casual link between a failure to divert and his injury).

Because Article 17 imposes liability for any "accident" without regard to culpability, "a relatively intimate link is required between the liability-triggering event (the accident) and plaintiffs' damages."  *Alvarez v. American Airlines, Inc.*, 1999 WL 691922, at *4 (S.D.N.Y. Sept 7, 2009) (citing *Shah v. Pan American World Services, Inc.*, 148 F.3d. 84, 97 (2d Cir. 1998)); *see also Margrave v. British Airways*, 643 F. Supp. 510, 514 (S.D.N.Y. 1986) ("To establish proximate cause, plaintiff must demonstrate a close relationship between cause and effect.").

Mrs. Shiwbodh's recoverable damages are limited to the bodily injuries she sustained as a result of the runway excursion.  After the landing, Mrs. Shiwbodh jumped from the wing of the plane but was able to walk unassisted immediately thereafter.  Mrs. Shiwbodh alleges that she hit her head on the seat in front of her at the time of impact and suffered a laceration of approximately 8 cm to her scalp requiring stitches in the Emergency Room following the accident.  Aside from the laceration to her scalp, Caribbean Airlines maintains that Mrs. Shiwbodh suffered nothing more than general sprains/strains.

**V.   Stipulations of Fact and Law**

    **A.  <u>Uncontested Facts Which Require No Proof At Trial</u>**

    1.    Plaintiff Indrawatie Shiwbodh is a resident of the State of Connecticut.

    2.    Defendant Caribbean Airlines Limited is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*

    3.    Mrs. Shiwbodh was a passenger on board Caribbean Airlines Flight BW523 on July 30, 2011.

    4.    Caribbean Airlines Flight BW523 on July 30, 2011 was involved in a runway overrun at Cheddi Jagan International Airport in Georgetown, Guyana.

    5.    As a result of the overrun, Mrs. Shiwbodh seeks monetary damages.

    **B.  <u>Disputed Issues of Facts</u>**

    The nature and extent of Indrawatie Shiwbodh's injuries.

    **C.  <u>Agreed Issues of Law</u>**

    1.    Plaintiff's claims are governed by a treaty of the United States known as the Montreal Convention, Convention for the Unification of Certain Rules Relating to International Carriage by Air, done at Montreal, Canada on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, 1999 WL 33292734 (1999).

    2.    The July 30, 2011 overrun incident satisfies the "accident" requirement of Article 17 of the Montreal Convention.

    **D.  <u>Disputed Issues of Law</u>**

    **1.  <u>Plaintiff's Statement as to Disputed Issues of Law</u>**

    Mrs. Shiwbodh maintains that she suffered substantial injuries that were proximately caused by the accident, and that there is sufficient evidence to demonstrate

that she sustained these injuries.  In addition, Mrs. Shiwbodh maintains that she is entitled to recover damages for mental and emotion distress that arises from the bodily injuries that she suffered in the accident.  *See, e.g., Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 400 (2d Cir. 2004).  A plaintiff's own lay testimony ascribing mental injury to physical injury is admissible and sufficient to establish the requisite causation. *See, e.g*., *Katin v. Air France-KLM, S.A.*, 2009 WL 1940363, at *3-4 (E.D. Tex. Jul. 2, 2009) (finding, based on the plaintiff's deposition and affidavit testimony attributing anxiety to tooth injury, that "[a] reasonable jury could find that any anxiety suffered by the Plaintiff was directly related to his cracked crown"); *Tindall v. H & S Homes, LLC*, 2011 WL 5007827, at *6 (M.D. Ga. Oct. 20, 2011) ("Plaintiff may testify as to her own mental suffering and her lay opinion as to its cause. This testimony is also sufficient to create a jury issue as to whether Plaintiff is entitled to recover damages for mental anguish, pain, and suffering.").

**2.** **Defendant's Statement as to Disputed Issues of Law**

To establish liability under the Montreal Convention, Caribbean Airlines maintains that Mrs. Shiwbodh can only recover damages for injuries proximately caused by the accident and there is insufficient evidence showing that she sustained anything more than a small cut to her forehead and minor sprains/strains.

**VI.   Legal Issues**

Whether plaintiff can establish liability under Article 17 of the Montreal Convention and, if so, the amount of her damages.

7

## VII.   Voir Dire Questions

Defendant is a "foreign state" and therefore the case shall be tried by the Court without a jury.  *See* 28 USC § 1441(d).  Accordingly, there is no need for voir dire.

## VIII.   List of Witnesses

### Plaintiff's Witnesses

1.   Indrawatie Shiwbodh

2.   Yadram Shiwbodh

3.   Maleisa Shiwbodh

4.   Dr. Lorenzo Galante

5.   Dr. Michael P. Connair

6.   Dr. Enzo Stella

7.   Dr. Richard A. Zell

8.   Dr. Judith Gorelick

9.   Jeffrey Joy, MBA, M.Ed., CRC (expert witness)

10. Allen M. Ferrucci, M.D.[1]

11.  Any witness listed by Defendant.

### Defendant's Witnesses

1.   Matthew Skolnick, M.D.

2.   Any and all witnesses listed by Plaintiff.

---

[1] Allen Ferrucci, M.D., was not listed as a witness or disclosed pursuant to Rule 26(a), nor has a medical authorization been provided to defense counsel.  Dr. Ferrucci only recently became a treating doctor for Mrs. Shiwbodh.  The parties have discussed this matter and request a telephone conference with the Court.

IX.    **Exhibits**

**Plaintiff's Exhibits**

1.   Photographs of Plaintiff's Injuries

2.   Photographs of Exterior of Flight BW 523

3.   Photographs of Interior of Flight BW 523

4.   Whitney Imaging Center MRI of the Lumbar Spine dated September 12, 2011

5.   Hospital of St. Raphael Operative Note dated October 3, 2011 (Bilateral L4-5 Facet Joint Injection)

6.   SSC II Operative Note dated October 28, 2011 (Bilateral L4-5 Facet Joint Injection)

7.   Yale New Haven Hospital Operative Report dated October 18, 2012 (Right Ankle Arthroscopy)

8.   SSC II Operative Note dated November 16, 2012 (Bilateral L4-5, L5-S1 Facet Joint Injection)

9.   Enzo J. Sella, MD, Operative Note dated August 21, 2013 (Right Ankle Tenolysis of the Peroneal Longus and Brevis Tendons

10. Enzo J. Sella, MD- Right Ankle MRI dated January 17, 2014

11. Enzo J. Sella, MD – Impairment Rating of Indrawatie Shiwbodh dated April 3, 2014

12. Dr. Lorenzo Galante- Medical Records of Indrawatie Shiwbodh

13. Dr. Lorenzo Galante – Medical Bills and Medical Receipts for Indrawatie Shiwbodh

14. Dr. Lorenzo Galante- Deposition Exhibits

15. Dr. Michael P. Connair- Medical Records of Indrawatie Shiwbodh

16. Dr. Michael P. Connair- Medical Bills and Medical Receipts of Indrawatie Shiwbodh

17. Dr. Michael P. Connair -Deposition Exhibits

9

18. Dr. Enzo J. Sella – Medical Records of Indrawatie Shiwbodh

19. Dr. Enzo J. Sella – Medical Bills and Medical Receipts of Indrawatie Shiwbodh

20. Dr. Richard A. Zell – Medical Records of Indrawatie Shiwbodh

21. Dr. Richard A. Zell – Medical Bills and Medical Receipts of Indrawatie Shiwbodh

22. Louis J. Iorio- Medical Records of Indrawatie Shiwbodh

23. Louis J. Iorio- Medical Bills and Medical Receipts of Indrawatie Shiwbodh

24. Dr. Judith Gorelick- Medical Records of Indrawatie Shiwbodh

25. Dr. Judith Gorelick - Medical Bills and Medical Receipts of Indrawatie Shiwbodh

26. Dr. Moshe Hasbani, MD- Medical Records of Indrawatie Shiwbodh

27. Dr. Moshe Hasbani, MD - Medical Bills and Medical Receipts of Indrawatie Shiwbodh

28. Martin Hasenfeld, MD- Medical Records of Indrawatie Shiwbodh

29. Martin Hasenfeld, MD - Medical Bills and Medical Receipts of Indrawatie Shiwbodh

30. Adam S. Mednick, MD- Medical Records of Indrawatie Shiwbodh

31. Adam S. Mednick, MD- Medical Bills and Medical Receipts of Indrawatie Shiwbodh

32. Therapy Works- Medical Records of Indrawatie Shiwbodh

33. Therapy Works- Medical Bills and Medical Receipts of Indrawatie Shiwbodh

34. Village Street Physical Therapy- Medical Records of Indrawtie Shiwbodh

35. Village Street Physical Therapy- Medical Bills and Medical Receipts for Indrawtie Shiwbodh

36. Yale New Haven Hospital-Medical Records of Indrawatie Shiwbodh

37. Yale New Haven Hospital - Medical Bills and Medical Receipts of Indrawatie Shiwbodh

38.  Whitney Imaging- Medical Records of Indrawatie Shiwbodh

39. Whitney Imaging - Medical Bills and Medical Receipts of Indrawatie Shiwbodh

40. Radiology Associates, Inc.- Medical Records of Indrawatie Shiwbodh

41. Radiology Associates, Inc. - Medical Bills and Medical Receipts of Indrawatie Shiwbodh

42. Dr. Ryan N. Anamayah- Medical Records of Indrawatie Shiwbodh

43. Xerox Recovery Services Itemization of Benefits Paid for Indrawtie Shiwbodh

44. Letter from Aetna Life Insurance Company dated July 8, 2014 (LTD)

45. Aetna Life Insurance Company Capabilities and Limitations Worksheet dated April 2015

46. Letter from Social Security Administration dated July 6, 2013 (Disability)

47. Jeffrey Joy – Deposition Exhibits

48. Jeffrey Joy – Expert Report dated December 12, 2013

49. Whitney Imaging Center CT Scan of the Right Ankle dated June 13, 2012

50. Yale New Haven Hospital MRI of the Right ankle performed on May 6, 2013

51. Allen M. Ferrucci, MD- Medical Records of Indrawatie Shiwbodh

52. Allen M. Ferrucci, MD – Medical Bills and Medical Receipts of Indrawatie Shiwbodh

53. All exhibits listed by Defendant.

**Defendant's Exhibits**

1. Indrawatie Shiwbodh – Deposition Exhibits

11

2.  Yadram Shiwbodh – Deposition Exhibits

3.  Maleisa Shiwbodh – Deposition Exhibits

4.  Jeffrey Dean Joy, MBA, M.Ed., CRC – Deposition Exhibits

5.  Michael P. Connair, M.D. – Deposition Exhibits

6.  Matthew Skolnick, M.D. – Deposition Exhibits

7.  Matthew Skolnick. M.D. – Expert Report dated January 13, 2014

8.  Lorenzo Galante, M.D. – Deposition Exhibits

9.  Lorenzo Galante, M.D. medical records dated February 26, 2007 – March 30, 2007; April 30, 2007; June 14, 2008; August 19, 2011; September 9, 2011; November 2, 2011; December 8, 2011; February 28, 2012; March 14, 2012; March 28, 2012; May 23, 2012; July 16, 2012; March 8, 2013;

10. Lorenzo Galante, M.D. work excuse notes dated February 26, 2007; April 30, 2007

11. Whitney Imaging Center MRI report dated March 19, 2007

12. Radiology Associates, Inc. diagnostic imaging reports dated August 19, 2011
    X-Rays of the Lumbar Spine, Left and Right Hip, Right and Left Femur, Pelvis, Right and Left Ankle, Left and Right Foot, Dorsal Spine, Cervical Spine

13. Hospital of Saint Raphael medical record dated August 23, 2011
    CT Scan of the Brain

14. Whitney Imaging Center MRI report dated September 12, 2011
    MRI of Lumbar Spine

15. Whitney Imaging Center MRI report dated October 6, 2011
    MRI of Right Foot/Ankle

16. Whitney Imaging Center MRI report dated October 13, 2011
    MRI of Right Knee

17. Michael Connair, M.D. medical records dated September 28, 2011; October 21, 2011; November 15, 2011; April 17, 2012; June 5, 2012; June 26, 2012;

18. Martin Hasenfeld, M.D. medical record dated January 24, 2012

19. Adam S. Mednick, M.D. medical records dated February 14, 2012; February 27, 2012

20. Whitney Imaging Center MRI report dated February 20, 2012
    MRI of Brain; MRI of Cervical Spine

21. Judith Gorelick, M.D. medical records dated December 1, 2011; May 30, 2012

22. Whitney Imaging Center CT scan report dated June 13, 2012
    CT scan of Right Ankle/Foot

23. Yale New Haven Hospital medical record dated May 6, 2013
    MRI Right Ankle

24. Louis Iorio, M.D., medical record dated May 10, 2013

25. Richard Zell, M.D., medical records dated January 2, 2013; May 8, 2013; May 22, 2013

26. Enzo Sella, M.D., medical records dated June 20, 2013; August 21, 2013; January 30, 2014; April 3, 2014; July 21, 2014

27. Moshe Hasbani, M.D., medical record dated January 30, 2014

**X.      Deposition Testimony**

Plaintiff and all witnesses are expected to testify live.

**XI.     Requests for Jury Instructions**

This is a non-jury case.

**XII.    Anticipated Evidentiary Problems**

The parties do not presently anticipate specific or unusual evidentiary problems, but will raise them as the need arises during trial.

13

**XIII.   Proposed Findings of Fact and Conclusions of Law**

    **A.**    <u>Uncontested Findings of Fact</u>

    1.    On July 30, 2011, plaintiff Indrawatie Shiwbodh was travelling on board Caribbean Airlines Flight BW523 from John F. Kennedy Airport in New York to Cheddi Jagan International Airport in Georgetown, Guyana.  *See* Compl. ¶¶ 10, 12 [DE 1].

    2.    Caribbean Airlines Flight BW523 overran the runway upon landing at Cheddai Jagan International Airport in Georgetown, Guyana on July 30, 2011(the "Incident").  *See* Compl. ¶ 13 [DE 1].

    3.    As a result of the Incident, Indrawatie Shiwbodh sustained bodily injuries for which she seeks monetary damages.  *See* Compl. ¶ 14 [DE 1].

    **B.**    <u>Plaintiff's Proposed Findings of Fact</u>

    1.    At the time of the crash, Indrawatie Shiwbodh struck her head on the seat in front of her, sustaining a laceration to her forehead, which required suturing.  Report of Lorenzo Galante, M.D., August 19, 2011, Report of Martin Hasenfeld, M.D., September 27, 2011.

    2.    In the aftermath of the plane crash, Mrs. Shiwbodh, while exiting the fractured fuselage, jumped to the ground from the wing of the airplane – a height of approximately twelve feet, injuring her lumbar spine, right knee and right ankle.  Report of Michael Connair, M.D., September 28, 2011.

    3.    When examined nineteen days later by her primary care physician, Lorenzo Galante, M.D., Mrs. Shiwbodh complained of pain in her head, neck, back, right leg, both feet, and left arm, and the right side of her scalp.  She was given an initial

diagnosis of neck sprain, cervicalgia, low back sprain, closed head injury, and costochondritis.  Report of Lorenzo Galante, M.D.

4.      Mrs. Shiwbodh sustained an annular tear and broad based annular bulge at L4-5 in her spine as a result of a prior motor vehicle collision which occurred in 2007. However, the pain from that injury had resolved completely prior to the plane crash of July 30, 2011.  Report of Michael Connair, M.D., October 11, 2011.

5.      The plane crash exacerbated Mrs. Shiwbodh's preexisting low back condition, causing her to suffer renewed pain, lower right radicular symptoms and functional impairment.  Reports of Michael Connair, M.D., October 11, 2011, November 15, 2011, April 17, 2012.

6.      Neither physical therapy, medication, nor a series of lumbar facet injections provided long term relief from her back pain.  Still, she is not a surgical candidate.  Reports of Michael Connair, M.D., November 15, 2011, June 5, 2012, Reports of Martin Hasenfeld, September 27, 2011, October 15, 2011, December 1, 2011, November 14, 2012, December 6, 2012, Operative Reports, October 3, 28, 2011, November 16, 2012.

7.      An October 13, 2011 MRI of the right knee showed small joint effusion but no evidence of meniscal tear or ligamentous injury.  Report of Michael Connair, M.D., February 28, 2012.

9.      The right knee injury, which resulted in medial and patellofemoral compartment pain, responded, if only temporarily, to steroidal injection and the use of Voltaren gel.  Reports of Michael Connair, M.D., November 15, 2011, February 28, 2012, June 5, 2012.

10.     Although imaging of the right knee was unremarkable, Dr. Connair noted, in his report of June 5, 2012, that "[t]here may be articular damage not appreciable by MRI scan."  Report of Michael Connair, M.D., June 5, 2012.

11.     At the time of her injury, Mrs. Shiwbodh was employed with Covidien, a medical device manufacturer, at its North Haven, Connecticut facility as an assembler.

12.     As her job required extensive walking and standing, Dr. Connair, in April 2012, deemed her totally disabled from work.  Report of Michael Connair, April 17, 2012.

13.     Between the time of her injury and June 2012, the pain in Mrs. Shiwbodh's right ankle was unremitting and had not responded to any treatment modalities, including steroidal injection.  Report of Michael Connair, June 5, 2012.

14.     A CT scan of the right ankle performed on June 13, 2012 revealed the following:  "Small osteophytes [were] noted off the anterior distal fibula and adjacent anterolateral tibial plafond with a small intraarticular loose body 4 mm x 3 mm, not detected by the prior MRI study."  It was suggested that "the findings may [sic] degenerative or related to prior trauma."  Report of Michael Connair, June 26, 2012.

15.     Mrs. Shiwbodh was examined by Richard Zell, M.D., another orthopedic surgeon, on September 25, 2012.  In his report of that date, Dr. Zell noted:  "She has tenderness most marked over the anterior aspect of the tibiotalar joint and mild tenderness in the sinus tarsi.  Ankle motion is full with neutral dorsiflexion and plantar flexion of 35 degrees to 40 degrees . . . ."  He further noted, among other things, that "radiographs of the ankle AP, lateral, and mortise views demonstrate mild spurring of the

anterior aspect of the tibiotalar joint . . ."  Report of Richard Zell, M.D. dated September 12, 2012.

16.     At the time of his examination of Mrs. Shiwbodh on October 16, 2012, Dr. Zell noted "[t]here is some tenderness in the sinus tarsi and some lateral swelling." Report of Richard Zell, M.D. dated October 16, 2012.  At that time, the decision was made to proceed with an ankle arthroscopy, debridement, and a cheilectomy.  Report of Richard Zell, M.D., October 16, 2012.

17.     On October 26, 2012, Mrs. Shiwbodh underwent right ankle arthroscopy with debridement.  The procedure revealed a loose osteochondral fragment along the anterolateral distal tibia.  Report of Richard Zell, October 26, 2012.

18.     Her post-surgical course included physical therapy, a Medrol dosepak, and steroidal injection.  Reports of Richard Zell, October 26, 2012, January 2, 2013 and April 13, 2013.

19.     Despite the surgery and post-surgical treatment, her ankle pain and swelling persisted.  Report of Richard Zell, M.D., April 13, 2013.

20.     Judith A. Gorelick, M.D., a neurosurgeon, examined Mrs. Shiwbodh on May 30, 2012, at which time she reported Mrs. Shiwbodh's complaint of right leg pain that had been "progressively worsening since she was seen last year."  Report of Judith A. Gorelick, May 30, 2012.  She added that if diagnostic imaging failed to reveal any significant structural pathologies amenable to a surgical intervention, she would recommend a program of pain management.  Id.

21.     Diagnostic imaging failed to reveal any significant structural pathologies amenable to a surgical intervention.

22.     In February 2012, Mrs. Shiwbodh was examined, on referral by her primary medical group, by Adam Mednick, M.D., a neurologist.  Report of Adam Mednick, M.D., February 27, 2012.

23.     At the time of that exam, Mrs. Shiwbodh gave a history of having been injured in a plane crash in June 2011 and complained of right-sided neck pain.  Id.

24.     In his report of that exam, Dr. Mednick wrote:

> On the basis of her history and examination, and given the results of the diagnostic studies thus far done, Mrs. Shiwbodh's symptoms are due to musculoskeletal strain injuries to her neck, shoulders, and lower back, in addition to tension-type headaches, and mild posttraumatic vestibular dysfunction.  I've suggested that she continue with PT and may consider OTC NSAIDs, e.g. Ibuprophen.

Id.

25.     On June 20, 2013, Mrs. Shiwbodh was examined by Enzo Sella, M.D., an orthopedic surgeon, on referral from her primary care physician, Lorenzo Galante, M.D. Report of Enzo Sella, M.D., June 20, 2013.

26.     At that time, Mrs. Shiwbodh gave a history of having been involved in a plane crash and complained of pain on the lateral side of the right ankle.  She reported that she had been treated for that injury by Dr. Zell but that, despite his treatment, the pain and swelling on the lateral side of her right ankle continued, with pain on ambulation.  She described her pain as "severe, sharp, and constant" and reported that it was aggravated by standing and walking.  Id.

27.     An MRI of the right ankle performed on May 6, 2013 revealed a peroneal tendon tear.

28.     In light of the MRI finding and Mrs. Shiwbodh's subjective complaints, Dr. Sella recommended an exploration and fixation.  Id.

18

29.     On August 21, 2013, Mrs. Shiwbodh underwent a tenolysis of the peroneus brevis and longus of the right ankle and excision of low lying muscle fibers of the peroneus brevis.  The procedure was performed on an out-patient basis.  Yale-New Haven Hospital Operative Report, August 21, 2013.

30.     Between August 21, 2013 and January 30, 2014, Mrs. Shiwbodh was totally disabled from her work at Covidien.  Report of Enzo Sella, M.D., January 30, 2014.

31.     More than five months post surgery, Mrs. Shiwbodh was still complaining of pain in her right ankle and numbness.  She still had residual swelling around the ankle.  Id.

32.     An MRI of the right ankle done on January 17, 2014 showed peroneus brevis and longus endinosis and also mild Achilles tendonitis with heel spur and some thickening of the plantar fascia.  Id.

33.     On April 3, 2014, Dr. Sella determined that Mrs. Shiwbodh had reached maximum medical improvement and, according to the AMA Guidelines for Permanent Partial Impairment, Sixth Edition, had a permanent partial impairment and loss of function of 14% of the right foot and ankle.  Report of Enzo Sella, M.D., 3, 2014.

34.     Since that time, the pain in Mrs. Shiwbodh's right ankle has worsened. The prognosis is poor.  Presently, her treatment options are conservative care with pain management versus surgical intervention.  If she opts for surgery, the recommended procedure is an ankle arthroscopy with extensive debridement, trimming of the peroneal tendons with possible repair versus tenodesis, and a Brostrom procedure with Gould.  In

the future, she may require an ankle fusion or ankle replacement.  Report of Allen M.

Ferrucci, M.D., April 23, 2015.

35.    As a result of the injuries which she sustained in the plane crash of July

30, 2011, Mrs. Shiwbodh was disabled from work at various times between July 30, 2011

and January 2012.  In January 2012, she was released to return, and did return, to light

duty work.  On February 28, 2012, she was deemed totally disabled from work.  She has

not returned to work since then.

36.    By order dated July 6, 2013, the Social Security Administration deemed

her incapable of performing any form of gainful employment by reason of the injuries

which she had sustained as a result of the plane crash and, so, awarded her Social

Security Disability benefits, retroactive to January 2012.

37.    The plaintiff's lost earnings to date total $132,746.64.  Plaintiff's List of

Special Damages.

38.    Jeffrey Joy, MBA, M.Ed., CRC performed a vocational and earning

assessment of Mrs. Shiwbodh.  His conclusion, based on an examination of Mrs.

Shiwbodh, a review of the reports and records of her treatment for the injuries which she

sustained in the plane crash, a consideration of her vocational and educational

background, and a survey of the labor market is as follows:

> Mrs. Shiwbodh earned an average of $39,880 plus benefits over the last three full
> years of employment and [sic] represents basis for a lost earning capacity.  As a
> result of the injuries sustained on July 30, 2011, Mrs. Shiwbodh is disabled and
> unable to sustain any competitive work within the local labor market and she will
> reasonably experience a present value earning capacity of $635,818 to $1,157,861
> over expected worklife [14.25 years].

Report of Jeffrey Joy, MBA, M.Ed., CRC, December 12, 2013.

39.    Mrs. Shiwbodh has incurred a total of $125,520.24 in medical treatment expenses, comprised of the following:

- Broadway Medical Group, LLC :          $4,260
- Michael Connair, MD :                  $7,495
- Shoreline Surgery Center:              $10,080
- AIM Radiology:                         $3,319.99
- Whitney Imaging Center:                $7,887.11
- MedSolutions:                          $3,110.71
- CT Comprehensive Neurologic Mgt:       $2,901
- The Orthopaedic Group:                 $7,485
- Connecticut Orthopaedic Specialists:   $2,280
- Village Street Physical Therapy:       $3,776.59
- Therapy Works:                         $9,420
- Connecticut Neuroscience:              $4,725
- Anesthesia Associates:                 $2,800
- YNH Hospital of St. Raphael:           $13,032.45
- Michael Vandlik, DMD:                  $184
- Meriden Imaging:                       $78
- Yale Medical Group:                    $255
- Yale New Haven Hospital:               $40,637.40
- Rite Aid Pharmacy                      $1,792.99

C.   **Defendant's Proposed Findings of Fact**

1.    Mrs. Shiwbodh sustained musculoskeletal injuries consistent with whiplash syndrome, including neck and back sprains with chest pain.  *See* Medical Record of Lorenzo Galante, M.D., dated August 19, 2011.

2.    X-rays of Mrs. Shiwbodh's ankles and feet taken on August 19, 2011 did not reveal any fractures, dislocations and the final impression was "no acute bony abnormality." *See* Radiology Associates, Inc. Diagnostic Imaging Reports dated August 19, 2011 of the Left and Right Ankle and the Left and Right Foot.

3.    Mrs. Shiwbodh was diagnosed with a right ankle sprain.  *See* Medical Record of Lorenzo Galante, M.D., dated September 9, 2011.

4.    Mrs. Shiwbodh's MRI of the right ankle taken on October 6, 2011, was unremarkable.  *See* Whitney Imaging Center medical record dated October 6, 2011; *see also* Medical Record of Michael P. Connair, M.D., dated October 11, 2011.

5.    Mrs. Shiwbodh's injured her back in a motor vehicle accident in 2007. *See* Medical Record of Lorenzo Galante, M.D., dated February 26, 2007 – March 26, 2007; Whitney Imaging Center MRI dated March 19, 2007; Work Excuse Note of Lorenzo Galante dated April 30, 2007; Whitney Imaging Center MRI report dated September 12, 2011 (unchanged MRI compared to results of 2007); Medical Record of Lorenzo Galante dated November 2, 2011.

6.    The MRI report of Mrs. Shiwbodh's lumbar spine performed on September 12, 2011, was "unchanged since 2007" showing no new injuries since her motor vehicle accident in 2007. *See* Medical Record of Michael Connair, M.D., dated October 11, 2011.

7,      Mrs. Shiwbodh was able to "squat, walk[] on heels and toes" during an examination with Martin Hasenfeld, M.D. on January 24, 2012.  *See* Medical Record of Martin Hasenfeld, M.D., dated January 24, 2012.  Dr. Hasenfeld reported that Mrs. Shiwbodh should be able to "sit and stand at work."  *See id.*

8.      Adam S. Mednick, M.D., Ph.D., reported that based on Mrs. Shiwbodh's "history and examination" and the "results of the diagnostics studies thus far done, Mrs. Shiwbodh's symptoms are due to musculoskeletal strain injuries to her neck, shoulders and lower back in addition to tension-type headaches, and mild posttraumatic vestibular dysfunction." *See* Medical Record of Adam S. Mednick, M.D., Ph.D., dated February 27, 2012.

9.      Judith Gorelick, M.D., reported that Mrs. Shiwbodh "developed right sided neck pain with referred symptoms to the shoulder" that was not present during her December 2011 examination.  *See* Medical Record of Judith L. Gorelick, M.D., dated May 30, 2012.  During the examination of Mrs. Shiwbodh on May 30, 2012, Dr. Gorelick stated that Mrs. Shiwbodh's neck showed "a good range of motion.  Strength in upper and lower extremities is full throughout.  There is some generalized weakness, which appeared to be mostly effort-related." *Id.*  Dr. Gorelick reported that the MRIs provided do "not show structural cause for her right neck pain." *Id.*

10.     As of May 30, 2012, Mrs. Shiwbodh reported to Judith Gorelick, M.D., that she exercised on a treadmill at home 2 or 3 times a week.  *See* Medical Record of Judith L. Gorelick, M.D., dated May 30, 2012.

11.     A small loose bone subsequently discovered in Mrs. Shiwbodh's right foot on June 13, 2012, nearly ten months after the accident, was reportedly "new from the

previous [MRI] of October 2011 and may be degenerative or related to prior trauma." *See* Whitney Imaging Center CT scan report dated June 13, 2012.

12.     Mrs. Shiwbodh's radiographs from April 24, 2013 of the ankle were "negative for acute fracture, dislocation, subluxation, osseous, or articular abnormality." *See* Medical Record of Louis J. Iorio, M.D., dated May 10, 2013.

13.     Louis Iorio, M.D., reported that he could not find a "clearcut cause for [Mrs. Shiwbodh's] symptoms" based on "clinical exams, plain radiographs, or MRI scanning" and his diagnosis was for "chronic posttraumatic nonspecific right ankle pain." *See* Medical Record of Louis J. Iorio, M.D., dated May 10, 2013.

14.     Richard Zell, M.D. reported that Mrs. Shiwbodh "had questions regarding the findings of the peroneal tendon tear" but while "she [did] have this by MRI, this [was] not the clinical area of her tenderness." *See* Medical Record of Richard Zell, M.D., dated May 22, 2013.

15.     Further, Louis Ioiro, M.D., reported that he did not "agree with the radiologist's interpretation of peroneal tendon tear and tenosynovitis." *See* Medical Record of Louis J. Iorio, M.D., dated May 10, 2013.

16.     Despite the findings of these two doctors, Mrs. Shiwbodh wanted "something done" and therefore a third doctor, Enzo Sella, M.D., performed surgery on her peroneal tendon. *See* Medical Record of Louis J. Iorio, M.D., dated May 10, 2013.

17.     During the surgery, Enzo Sella, M.D., reported that he did not find tears of either the peroneus brevis or the peroneus longus tendons. *See* Medical Record of Enzo Sella, M.D., dated August 21, 2013.

18.     Enzo Sella, M.D., cleared Mrs. Shiwbodh to return to light work duty on January 30, 2014.  *See* Medical Record of Enzo Sella, M.D., dated January 30, 2014.

**D.     Uncontested Conclusions of Law**

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330 (Actions Against Foreign States) because Defendant Caribbean Airlines is a "foreign state" as that term is defined in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1603(a).

2.     Mrs. Shiwbodh's claims are exclusively governed by a treaty of the United States commonly known as the Montreal Convention, Convention for the Unification of Certain Rules Relating to International Carriage by Air, done at Montreal, Canada on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, 1999 WL 33292734 (1999).  *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155 (1999).

3.     Any and all actions for any harm occurring while a passenger is on board the aircraft or during the course of embarking or disembarking "must be brought under the terms of the [Montreal Convention] or not at all."  *King v. Am. Airlines, Inc.*, 284 F.3d 352, 360 (2d Cir. 2002) (citing *Tseng*, 525 U.S. at 161).

4.     Pursuant to Article 17 of the Montreal Convention, Mrs. Shiwbodh must prove that an "accident" caused her injuries to recover damages.  *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991).

5.     The U.S. Supreme Court has explained that an "accident" is "an unexpected or unusual event or happening that is external to the passenger."  *Air France v. Saks*, 470 U.S. 392, 405 (1985).

6.      Caribbean Airlines concedes that the Incident constitutes an "accident" under the Montreal Convention.

**E.      Plaintiff's Conclusions of Law**

1.      Caribbean Airlines is strictly liable for any bodily injuries suffered by Mrs.   Shiwbodh that were proximately caused by the accident and there is sufficient evidence to show that she sustained substantial bodily injuries.  *See, e.g., Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 272 (E.D.N.Y. 2013) ("Proximate cause analysis requires that plaintiff demonstrate an uninterrupted connection between the external unusual event and his ultimate injury.").

2.      Mrs. Shiwbodh is also entitled to recover damages for mental and emotion distress that arises form the bodily injuries that she suffered in the accident.  *See, e.g., Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 400 (2d Cir. 2004).  A plaintiff's own lay testimony ascribing mental injury to physical injury is admissible and sufficient to establish the requisite causation. *See, e.g., Katin v. Air France-KLM, S.A.*, 2009 WL 1940363, at *3-4 (E.D. Tex. Jul. 2, 2009) (finding, based on the plaintiff's deposition and affidavit testimony attributing anxiety to tooth injury, that "[a] reasonable jury could find that any anxiety suffered by the Plaintiff was directly related to his cracked crown"); *Tindall v. H & S Homes, LLC*, 2011 WL 5007827, at *6 (M.D. Ga. Oct. 20, 2011) ("Plaintiff may testify as to her own mental suffering and her lay opinion as to its cause. This testimony is also sufficient to create a jury issue as to whether Plaintiff is entitled to recover damages for mental anguish, pain, and suffering.").

F.   **Defendant's Conclusions of Law**

1.     Mrs. Shiwbodh can only recover damages for injuries proximately caused by the accident and there is insufficient evidence showing that she sustained anything more than a small cut to her forehead and minor sprains/strains.  *See Sakaria v. Trans World Airlines*, 8 F.3d 164, 172-173 (4th Cir. 1993) ("proof of causation must be such as to suggest 'probability' rather than mere 'possibility,' precisely to guard against raw speculation by the fact-finder"); *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 659-660 (S.D.N.Y. 2001) (plaintiff must show casual link between a failure to divert and his injury).

2.     To establish proximate cause, "a relatively intimate link is required between the liability-triggering event (the accident) and plaintiffs' damages." *Alvarez v. American Airlines, Inc.*, 1999 WL 691922, at *4 (S.D.N.Y. Sept. 7, 2009) (citing *Shah v. Pan American World Services, Inc.*, 148 F.3d. 84, 97 (2d Cir. 1998)); *see also Margrave v. British Airways*, 643 F. Supp. 510, 514 (S.D.N.Y. 1986) ("To establish proximate cause, plaintiff must demonstrate a close relationship between cause and effect.").

XIV.   **Length of Trial**

The parties believe the trial should last no longer than three (3) days.

XV.   **Further Proceedings**

There are no further proceedings required prior to trial.

XVI.   **Courtroom Technology**

The parties would like to use an Elmo for the display of exhibits during trial and would like to be able to plug in a laptop computer for the display of exhibits or the display of a PowerPoint or similar presentation during Opening Statement or Closing Arguments.

## XVII.  Consent to Magistrate

The parties have not consented to trial by a Magistrate Judge.

PLAINTIFF INDRAWATIE SHIWBODH

BY: /s/ Steven D. Jacobs
   Steven D. Jacobs (ct00409)
   Jacobs & Jacobs
   700 State Street
   New Haven, CT 06511
   Tel:  203.777.2300
   Fax: 203.773.8075
   E-mail: steve@jacobs-jacobs.com

   - and -

   Curtis Miner (*pro hac vice*)
   Colson Hicks Edison
   255 Alhambra Circle, Penthouse
   Coral Gables, FL 33134
   Tel:  305.476.7400
   Fax:  305.476.7444
   E-mail: curt@colson.com

DEFENDANT CARIBBEAN AIRLINES LIMITED

BY: /s/ Vincent M. Marino
   Vincent M. Marino (ct17186)
   Cohen and Wolf, P.C.
   1115 Broad Street
   Bridgeport, CT 06604
   Tel:  203.368.0211
   Fax: 203.337.5582
   E-mail: vmarino@cohenandwolf.com

   - and -

   John Maggio (*pro hac vice*)
   Condon & Forsyth LLP
   7 Times Square
   New York, NY 10036
   Tel:  212.490.9100
   Fax: 212.370.4453
   E-mail: jmaggio@condonlaw.com