UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Case No.: 3:12-cv-01706-AVC

INDRAWATIE SHIWBODH,

                Plaintiff,

      vs.

CARIBBEAN AIRLINES LIMITED,

             Defendant.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT

Plaintiff Indrawatie Shiwbodh, by and through her undersigned counsel, respectfully submits the following proposed findings of fact following the bench trial in this matter.

## BACKGROUND

The Court conducted a bench trial in this matter on December 11, 12 and 13, 2017.  The Court heard testimony from plaintiff Indrawatie Shiwbodh, her husband Yadram Shiwbodh, Dr. Allen Ferrucci (by videotaped deposition), and plaintiff's expert witness Jeffrey Joy.  The defendant presented testimony from expert witness Dr. Matthew Skolnick.  The Court received into evidence a Notebook of plaintiff's trial exhibits (numbered 1 through 26).

The parties agreed that plaintiff's claims are governed by a treaty of the United States known as the Montreal Convention (the Convention for the Unification of Certain Rules Relating to International Carriage by Air, done at Montreal, Canada on May 28, 1999, *reprinted in* S. Treaty Doc. 106-45, 1999 WL 33292734 (1999)).  Pretrial Stip. ¶ V. C.1.  The parties also agreed that Mrs. Shiwbodh was a passenger on board Caribbean Airlines Flight #BW523 on July 30, 2011, that the flight was involved in a runway overrun at Cheddi Jagan International Airport in Georgetown, Guyana, and that the overrun

incident satisfies the "accident" requirement of Article 17 of the Montreal Convention. *Id.* ¶ V.A & C. Accordingly, the issue to be addressed at trial was whether plaintiff's bodily injuries were proximately caused by the "accident," and the nature and extent of her injuries. *Id.* ¶ V.B.

## PROPOSED FINDINGS OF FACT

### I.    INDRAWATIE SHIWBODH - BACKGROUND

1.     Plaintiff Indrawatie Shiwbodh is a 47-year-old woman who was born and raised in Guyana.  She immigrated to the United States when she was 18 and is now a U.S. citizen.  She is married to Yadram Shiwbodh, and they live in Waterbury, Connecticut.  Tr. 10-13, 16.

2.     Before July 30, 2011, Mrs. Shiwbodh was in generally good health and lived her life without pain.  Tr. 17-18.  Though diabetic, she managed her condition and was not insulin dependent.  Tr. 18.  She had no pain in her ankle, neck, knees, or head, and she did not suffer from chronic headaches.  Tr. 18-19.

3.     Mrs. Shiwbodh began working at Covidien, formerly U.S. Surgical, in 1988.  Tr. 19.  It is the only job she has had since arriving in the United States.  Tr. 55-56.  She worked full-time, mostly in the evenings, and often covered overtime shifts as well.  Tr. 21-22, 120.

4.     When she was not working, she was active.  Tr. 120.  Mrs. Shiwbodh took care of her elderly parents and her daughter.  Tr. 21-23, 120, 124.  This included running errands for the family, driving her family to appointments and school, cooking, cleaning, gardening and doing laundry and yard work.  *Id.*  As a hobby, Mrs. Shiwbodh gardened.  Tr. 23.

### II.    THE CARIBBEAN AIRLINES ACCIDENT

5.     On July 30, 2011, Mrs. Shiwbodh, her husband, and their daughter were travelling on board Caribbean Airlines Flight BW523 from John F. Kennedy International Airport in New York to Cheddi Jagan International Airport in Georgetown, Guyana.  Pretrial Stip. ¶ V.A; Tr. 24-25.  They were intending to take a summer vacation and visit family.  Tr. 24.

2

6.      During a nighttime landing, Caribbean Airlines Flight BW523 overran the runway at Cheddi Jagan International Airport.   The force of the accident caused the airplane's fuselage to break at a point behind the cockpit and in front of the wing.  Overhead bins burst open and luggage and other objects fell onto the seats and aisle. Tr. 25.  The passengers were required to perform an emergency evacuation in the darkness while facing imminent risks of explosions and fire from the damaged plane.  Tr. 25-27, 32; Ex. 20A.

7.      At the time of the crash, Mrs. Shiwbodh struck her head on the seat in front of her, sustaining a large laceration to her forehead.  Tr. 25-26.  As Mrs. Shiwbodh recalled, her daughter looked at her and said, "['']Mom … your head [is] bleeding … you got a big cut on your head.[']  And then I know that I got a big cut.  So my husband, he have to take off his shirt, and I have to wrap my he[ad] because it's all over my body."  Tr. 26.

8.       Mr. Shiwbodh opened the emergency exit hatch located over the wing and evacuated the airplane by escaping onto its wing and falling to the ground below.  There was no light.  Tr. 29-31.

9.      Mrs. Shiwbodh followed her husband onto the wing, which was slippery.  She slid off the wing before landing on the ground approximately 12 feet below.  No one assisted her.  She landed first on her feet and then fell to her hands and knees.  Tr. 28-31.  Ex. 2S, p. 1; Ex. 5S.

10.      As Mrs. Shiwbodh recalled: "When I land I am I guess scared and I feel dizzy, because my head was bleeding."  Tr. 31.  The fall was traumatic, and she sustained injuries to her back, right knee, and right foot.   Tr. 30-35.

11.       She was told to move away from the airplane due to the risk of fire.  Tr. 32.  She was forced to walk to the airport terminal before she could seek medical treatment.  Tr. 93.

### III.    MRS. SHIWBODH'S INJURIES AND TREATMENT

#### A.    Pre-Surgical Treatment

12.    Since July 30, 2011, Mrs. Shiwbodh has persistently experienced headaches and pain in her right foot, right knee, and back that has not subsided with treatment.  Tr. 47-48, 63-64, 70-72, 79-81, 85; Ex. 2R, p. 3.   She did not have these symptoms before the crash.   Tr. 18-19, 47-48, 79-80, 124, 129; Ex. 2S, pp. 1-3

13.    The night of the accident, Mrs. Shiwbodh was treated at the Public Hospital in Georgetown, Guyana, where she received 10 stitches to her head.  She subsequently treated with Dr. Ryan Anamayah in Guyana, who removed and replaced her stitches, as they had been poorly done and were causing Mrs. Shiwbodh pain.  Tr. 32-34; Ex. 20B.  Dr. Anamayah reported her laceration as being 8 cm long and described Mrs. Shiwbodh as suffering post-traumatic anxiety as a result of the accident.  Ex. 1.

14.    After returning home from Guyana, on August 19, 2011, Mrs. Shiwbodh was seen by her primary care doctor, Dr. Lorenzo Galante.[1]  She reported pain in her head, neck, back, right leg, both feet, and left arm, and the right side of her scalp, and described being traumatized as a result of the crash and unable to sleep.   Tr. 34-35; Ex. 2A.

15.    Dr. Galante's initial diagnosis was of neck pain and accompanying whiplash injury to the neck, lower back pain and accompanying back sprain, costochondritis (inflammation around the sternum), head injury, post-traumatic stress disorder, and injuries to the feet for which X-rays were ordered.  He prescribed Mrs. Shiwbodh pain medication and physical therapy at Village Street Physical Therapy in North Haven.  Tr.  34-35; Ex. 2A.

---

[1]    Prior to the accident, Dr. Galante had been Mrs. Shiwbodh's primary care doctor for approximately 11 years. Her primary ailments during that time had been hypertension, hyperglycemia, and high cholesterol, for which she was taking standard medications. Ex. 2S, p. 5.

16.     The conservative treatment was unsuccessful in alleviating Mrs. Shiwbodh's pain, and by September 2011, her condition worsened.  In particular, her right ankle became even more swollen and painful.  Tr. 36-39.

17.     Mrs. Shiwbodh continued to report post-crash anxiety, insomnia, headaches, neck pain, lower back pain, right ankle pain and swelling to Dr. Galante in her subsequent visits on September 9, October 7, and November 2, 2011.  Exs. 2B, 2C, 2D.  After her September visit, Dr. Galante ordered an MRI and subsequently noted in October that the MRI revealed an L4-5 annular tear in Mrs. Shiwbodh's lower back.[2]  In the November 2011 visit, he noted that Mrs. Shiwbodh had also developed right knee pain.  Exs. 2C, 2D.  She remained on pain and anxiety medications this throughout this entire period.  Exs. 2B, 2C, 2D.

18.     Beginning in September 2011, Mrs. Shiwbodh began receiving treatment on her spine for her back pain.  Tr. 39.  She was first seen by Dr. Martin Hasenfeld, a neurologist, who recommended and performed an L4-L5 facet joint injection on October 3, 2011, and again on October 28, 2011.  Ex. 4B, 4D.  Her back pain continued despite his treatment.  Tr. 40; Ex. 2S, p. 2; Ex. 4E, p. 2.

19.     Starting on September 28, 2011, Mrs. Shiwbodh also began treat with Dr. Michael Connair, an orthopedic surgeon, for the knee, foot and ankle pain that she had suffered since the plane crash.  Ex. 5A.  Dr. Connair initially noted a plantar fascial spur and anterior talar ligament strain, for which he gave Mrs. Shiwbodh an injection of Kenalog (a steroid) and Marcaine (an

---

[2]     Mrs. Shiwbodh sustained this tear and a broad-based annular bulge at L4-5 as a result of a prior motor vehicle collision which occurred in 2007, roughly four year before the accident at issue.  Ex. 25A, p. 1; Tr. 95.  However, the pain from that injury had resolved prior to the plane crash, only to return after the crash.  Tr. 20, 125-26; Ex. 2S, p. 2; *compare* Ex. 25A, p. 1 (February 2007, in the aftermath of the motor vehicle accident) *with* Ex. 25F, p. 1 (June 2007, wherein the back pain had resolved).

anesthetic) in her right ankle.  Exs. 5A, 5B.  On October 11, 2011, Mrs. Shiwbodh told Dr. Connair

that she was experiencing "clicking" in her right knee.  Ex. 5B.  Dr. Connair ordered an MRI of

the knee, noted a small joint effusion (increased fluid) in the right knee, and treated Mrs. Shiwbodh

with injections of Kenalog and Marcaine in her knee.  Ex. 5C.  She continued to take pain

medication.  *Id.* Though the injection initially afforded some relief, Mrs. Shiwbodh's symptoms

returned within several weeks of the injections.  Tr. 40-41; Ex. 5D.

20.     By December 27, 2011, Mrs. Shiwbodh reported substantial continuing back pain

(8 on a scale of 10), an inability to remain lying down for more than 1 hour at a time, as well as

significant right knee and right ankle pain (both 7 on a scale of 10) to Dr. Galante.  Ex. 2F.  She

also reported an inability to sleep due to pain, but that her medications were helping with her

anxiety and depression.  *Id.*   As Ms. Shiwbodh testified: "I was in pain all the time.  I was

depressed."  Tr. 41.  She couldn't work, sit, stand, walk, cook, or tend the house as she had

previously.  Tr. 41-42.

21.     Mrs. Shiwbodh's headaches, post-traumatic stress, depression, insomnia, and neck,

back, knee, ankle and foot pain continued substantially unabated throughout 2012, which she

reported to Dr. Galante during visits on February 28, March 14, March 28, April 24, May 23, July

16, and October 10, 2012.  Tr. 53; Exs. 2G, 2H, 2I, 2K, 2L, 2M.[3]  Dr. Galante diagnosed Mrs.

Shiwbodh with post-traumatic fibromyalgia on March 14, 2012, and Mrs. Shiwbodh began

reporting numbness in her extremities beginning on April 24, 2012.  Exs. 2H, 2I, 2M.  By May

2012, she reported that her pain in her right ankle, right knee, and back had increased to a 9 on a

scale of 10.  Ex. 2K.

---

[3]     She also reported these symptoms to Dr. Hasenfeld, Dr. Judith Gorelick (a neurosurgeon), Dr.
Connair, and Dr. Adam Mednick (a neurologist) during her visits with these doctors in 2012.  Ex.
4F, pp. 1-2; Ex. 5E; Ex. 5F; Ex. 5G; Ex. 5I; and 5J; Ex. 6A, p. 2; Ex. 6C, p. 1.

22.     On May 30, 2012, Mrs. Shiwbodh was examined by Dr. Judith Gorelick, a neurosurgeon, who for the first time observed that the natural curvature (cervical lordosis) of Mrs. Shiwbodh's spine was straightening.  Ex. 4F, p. 2.   She also noted a central disk protrusion in her neck at C5-C6, which indented the thecal sac.  *Id.*  Following an MRI of Mrs. Shiwbodh's spine, on November 14, 2012, Dr. Gorelick recommended facet joint injections on the L4-L5 and L5-S1 joints, which Mrs. Shiwbodh received on November 16, 2012.  Exs. 4H, 4I, 16T.  These injections provided no lasting relief, however.  Ex. 4J.

23.     Mrs. Shiwbodh also began to treat with a neurologist, Dr. Adam Mednick, starting on February 14, 2012. Ex. 6A.  Dr. Mednick ordered brain and cervical MRIs, but was unable to find a neurological cause for her pain. Ex. 6B

24.     With respect to her knee, ankle, and foot pain, Dr. Connair gave Mrs. Shiwbodh another round of Kenalog and Marcaine injections to her knee (on February 28, 2012) and ankle (on April 17, 2012, and June 26, 2012).  Exs. 5E, 5F.  But because her pain was unremitting, Dr. Connair acknowledged that that MRIs of Mrs. Shiwbodh's knee may not have revealed "articular damage [in the] medial and patellofemoral compartments" within the knee joints. Ex. 5G.  This included possibly an injury to her medial collateral ligament, though Dr. Connair was uncertain and noted that confirmation may require arthroscopic exploration of the knee. Ex. 5I, p. 2.

25.     Dr. Connair eventually ordered a CT scan of Mrs. Shiwbodh's right ankle.  Exs. 5G, 16S.  It revealed additional bone spurs (osteophytes) as well as a loose body in her ankle, approximately 4 mm by 3 mm, which had not been detected in her earlier MRI.  Exs. 5H, 16S.  Dr. Connair noted that if her symptoms did not respond to her current course of treatment, which included attempts at weight loss, ankle surgery to remove the loose body remained an option.  Ex. 5H.

26.     Between April and September 2012, Mrs. Shiwbodh's weight decreased from 223 pounds to 210 pounds.  Exs. 2J, 7A.  Her pain however remained unchanged.  *Id.*

### B.     First Ankle Surgery

27.     Mrs. Shiwbodh switched from Dr. Connair to Dr. Richard Zell, another orthopedic surgeon, beginning on September 12, 2012.  Tr. 106-7; Ex. 7A, p. 1.

28.     On October 18, 2012, Dr. Zell performed an ankle surgery, removing the loose body, correcting the bone spurring in her heal (via a cheilectomy, or partial bone removal), performing a general debridement (a cleaning of defects and debris in the ankle joint) of Mrs. Shiwbodh's injured ankle.  Ex. 7C; Ex. 11T (Ferrucci Dep.), p. 15.  The procedure revealed a loose osteochondral fragment along the anterolateral distal tibia, which Dr. Zell removed.  Ex. 7C.

29.     Despite her surgery, medications, and continued physical therapy, Mrs. Shiwbodh's headaches, post-traumatic anxiety, depression, insomnia, and neck, back, knee, ankle, and foot pain persisted into 2013, even becoming worse.  Tr. 58-60, 106; Ex. 2P; Ex. 2R; Ex. 7H; Ex. 7I; Ex. 7K; Ex. 8A.  She continued to take pain medication, and she continued to treat with Dr. Galante, her primary care doctor, for headaches and foot pain, doing so on February 18, March 18, August 13, September 20, and November 8, 2013.  Tr. 58; Ex. 2N, 2O, 2P, 2Q, and 2R.

30.     Mrs. Shiwbodh also continued treating with Dr. Zell concerning her foot and ankle pain.  Tr. 62.  Dr. Zell performed an injection of Celestone (a steroid), Marcaine, and Lidocaine (an anesthetic) on March 5, 2013, but it provided only temporary relief.   Ex. 7H; Ex. 7I.  After ordering a follow-up MRI, on May 8, 2013, Dr. Zell noted a partial tear of her peroneus longus – though he did not know if surgery to correct it would alleviate Mrs. Shiwbodh's pain.  Ex. 7K.

### C.    Second Ankle Surgery

31.     Mrs. Shiwbodh began treating with Dr. Enzo Sella, an orthopedic surgeon, on June 20, 2013, to treat the suspected tear of her peroneus longus, tendinopathy (degeneration of the tendon), peritendinitis (inflammation of the tendon sheath), plantar fasciitis (inflammation of the ligaments in the heel), and a large bone spur.  Ex. 8A; Ex. 11T (Ferrucci Dep.), pp. 20, 24.  He initially prescribed pain medications, but these did not help Mrs. Shiwbodh's pain.  Tr. 63.

32.     On August 21, 2013, Dr. Sella performed a surgery known as a tenolysis of the peroneus brevis and longus in Mrs. Shiwbodh's right ankle, excising the low-lying muscle fibers of the peroneus brevis but finding no tear in either the brevis or longus tendon. Ex. 8C.  The surgery did not relieve Mrs. Shiwbodh's pain. Ex. 8H; Tr. 74.

33.     By November 8, 2013, her condition deteriorated further.  She reported to Dr. Galante that she was not able to walk for more than 5 minutes at a time; that she could sit for no more than 10 minutes before needing to stand up, due to cramping; that she was experiencing loss of balance and dizziness; that driving had become painful; and that she was suffering from panic attacks related to the airplane crash. Ex. 2R.  Furthermore, Dr. Galante noted that her gait, which had previously been normal, had started to favor her left foot and had slowed down.  *Id.*  He also diagnosed Mrs. Shiwbodh with plantar fasciitis in her right foot for the first time.  *Id.*

34.     By this point, Dr. Galante had observed Mrs. Shiwbodh 16 times during the 27 months that had passed since the July 2011 airplane crash.  He had the opportunity to observe Mrs. Shiwbodh both before and after the accident, and to observe, test, and treat her injuries throughout the period of time that had passed.  *See* Ex. 2A through 2R.  Based on his observations, on November 8, 2013, Dr. Galante found that Mrs. Shiwbodh was suffering from low back pain, headaches, a closed head injury, ankle and foot pain, a whiplash injury to the neck, post-traumatic

stress disorder, dizziness, back pain and a back sprain, plantar fasciitis, and a tear of the peroneus longus in her right ankle.  He concluded: **"There is a direct causal relationship between the above diagnosis and the injury of July 2011."**  Ex. 2R, p.3.

35.     Dr. Galante continued: "The above diagnosis and symptoms have not significantly improved since the past 18 months, [Mrs. Shiwbodh] is not able to return to work …. Her condition has become chronic …. Her symptoms may alleviate and some resolve[] [but] only time will tell. Because of a headache [and] neck sprain and lumbar sprain she remains limited in her physical activities, she is not able to sleep and rest properly and dependent on medication to be comfortable …. Her dizziness is all related to her musculoskeletal spasm and sprain on her neck and head and she cannot engage in physical activity that require[s] balance/equilibrium abilities.  She cannot even walk one city block." *Id.*

36.     In conclusion, Dr. Galante opined that Mrs. Shiwbodh's injuries left her incapable of finding future employment.  "She cannot be placed in a competitive work situation because of [her] inability to stand or walk or sit[] for [a] prolonged period of time, she is unable to lift more than 5 pounds …. Should she unlikely return to work she would very likely need to be absent from work as a result of her impairments of for treatment … more than 4 times a month[;] she is not capable of working 8 hour[s] a day 5 days a week." Ex. 2R.

37.     In 2014, Mrs. Shiwbodh saw Dr. Galante seven more times – on February 27, April 1, May 1, July 21, August 28, October 30, and December 4.   Ex. 2T; 2U; 2V; 2W; 2X; 2Y; and 2Z.  She continued to report headaches, post-traumatic anxiety, depression, insomnia, neck pain, back pain, knee pain, and right ankle and foot pain (*id.*), though by this point her pain was affecting other parts of her body and causing intermittent numbing, tingling, and pain on her right side.  Ex. 2T; Ex. 2W; Ex. 2Z.  As Dr. Galante recounted in his December 4, 2014 report: **"This pattern has**

10

**not changed since she was involved in th[e] airplane crash."** Ex. 2Z.  Mrs. Shiwbodh also exhibited newfound weakness in her right leg, and by now was walking with a noticeable limp. Ex. 2U, Ex. 2V; Ex. 2W; Ex. 2X; and Ex. 2Z.  The dizziness that had developed the year earlier also continued, and Dr. Galante noted that Mrs. Shiwbodh was likely to need future ankle surgeries.  Ex. 2T; Ex. 2U.

38.    Mrs. Shiwbodh also continued to treat with Dr. Sella in 2014, reporting continued pain in her ankle, foot, and hip, with Dr. Sella diagnosing her with sural neuritis (inflammation of the sural nerve in the calf region) and hip bursitis on January 16, 2014, and noting that she was walking with a limp.  Ex. 8I; Ex. 11T (Ferrucci Dep.), pp. 20-22.

39.    An MRI of the right ankle done on January 17, 2014 showed peroneus brevis and longus tendinosis and also mild Achilles tendonitis with heel spur and some thickening of the plantar fascia.  Ex. 8J.

40.    Dr. Sella subsequently turned his medical practice over to Dr. Allen Ferrucci, also an orthopedic surgeon, who took over the treatment of Mrs. Shiwbodh in August 2014. Ex. 11T (Ferrucci Dep.), p. 7.[4]

41.    Throughout the remainder of 2014, Mrs. Shiwbodh's symptoms continued unabated. Ex. 8J.  During this period, Mrs. Shiwbodh also treated with another neurologist, Dr. Moshe Hasbani, who diagnosed her as having post-traumatic headaches and possible post-

---

[4]    Before transferring her case, on April 3, 2014, Dr. Sella initially determined that Mrs. Shiwbodh had reached maximum medical improvement and, according to the AMA Guidelines for Permanent Partial Impairment, Sixth Edition, had a permanent partial impairment and loss of function of 14% of the right foot and ankle. Ex. 8K.  Dr. Ferrucci did not agree with this assessment.  Ex. 11T (Ferrucci Dep.), p. 25.  Dr. Sella later modified this diagnosis, concluding on December 5, 2016, that "more likely than not," Mrs. Shiwbodh would require an ankle fusion or total ankle replacement," after which it would take 6 months to measure her maximal medical improvement.  Ex. 8N.

traumatic temporo-mandibular joint dysfunction.  Ex. 10A.  He prescribed her medication, but otherwise advised her that she may "have to live with the pain for the rest of her life."  Tr. 71.

42.     In April 2015, Dr. Ferrucci treated Mrs. Shiwbodh's ankle and noted weakness and instability in her peroneal tendon, continued pain and swelling, and that Mrs. Shiwbodh walked with an uneven gait.  Ex. 11A, pp. 1-3; Ex. 11T (Ferrucci Dep.), pp. 26-27.  He ordered a new MRI of her right ankle.  Ex. 11A, p. 3.  The MRI revealed a split tear of the peroneus brevis tendon, significant tendinopathy within the peroneus longus tendon (with possible tearing), inflammation around the superior peroneal retinaculum, substantial scarring, and arthritic changes in the tibial talar joint.  Ex. 11B, pp. 2-3; Ex. 11T (Ferrucci Dep.), pp. 28-29; Ex. 16Y.  Dr. Ferrucci recommended a new arthroscopic surgery with debridement to repair the peroneal tendons.  Ex. 11B, p. 3.  He also noted that the arthritic changes were a poor bellwether for Mrs. Shiwbodh's ankle, and that if her symptoms persisted she would require an ankle fusion or ankle replacement surgery in her future.  *Id.*

43.     Mrs. Shiwbodh also continued to treat with her primary care physician, Dr. Galante, seeing him five more times in 2015.  Ex. 2AA; Ex. 2BB; Ex. 2CC; Ex. 2DD; and Ex. 2EE.  Mrs. Shiwbodh continued to suffer headaches, post-traumatic anxiety, depression, insomnia, neck pain, back pain, knee pain, and right ankle and foot pain, dizziness, and intermittent numbing, tingling or pain throughout her right side, and she continued to walk with a noticeable limp.  Ex. 2AA; Ex. 2EE.  She complained of similar pains to Dr. Ferrucci during her visits with him in 2015.  Ex. 11A; Ex. 11B; Ex. 11C.

44.     In June 2015, Mrs. Shiwbodh treated with Dr. Hasbani for her ongoing headaches. Dr. Hasbani opined that Mrs. Shiwbodh "appears to be totally disabled from her chronic daily headaches."  Ex. 10B.

45.     Mrs. Shiwbodh also received treatment from Dr. Kenneth Kramer, an orthopedist, for her back pain, beginning in June 2015.  Ex. 13A.  On June 12, 2015, Dr. Kramer administered three facet injections (consisting of steroids Marcaine, Xylocaine, Lidocaine) on Mrs. Shiwbodh's L3-L4, L4-L5, and L5-S1 joints, which she found particularly painful, but which failed to provide relief.  Tr. 80-81.  Dr. Kramer afterward described Mrs. Shiwbodh as "desperate for relief" and a candidate for back surgery.  Ex. 13D; Ex. 13E.

### D.     Third Ankle Surgery

46.     On July 29, 2015, Mrs. Shiwbodh underwent ankle surgery with Dr. Ferrucci.  Ex. 11E; Ex. 11T (Ferrucci Dep.), p. 30-33; Tr. 76.   He performed an extensive ankle debridement, repaired the tear in the right peroneus longus; repaired subluxing (excess movement) that was detected in the right peroneus brevis, removed excess cartilage (an "exostosis") from the right tibia, repaired a tear in the superior peritoneal retinaculum, and performed an additional procedure designed to increase Mrs. Shiwbodh's ankle stability.  Ex. 11E, pp. 1-3.  He noted that the ligaments in Mrs. Shiwbodh's ankle were all hypertrophic (enflamed).  Ex. 11E, p. 2; Ex. 11T (Ferrucci Dep.), p. 11.

47.     Mr. Shiwbodh's recovery from this surgery was difficult and painful, and she was confined to bed for two weeks.  Tr. 76-77.  Her husband and daughter took care of her throughout this period.  *Id.*  The surgery was ultimately unsuccessful in providing Mrs. Shiwbodh with any relief.  Tr. 78.  Ex. 11K, p. 1-2.  Given her ongoing symptoms, Dr. Ferrucci noted on January 6, 2016, that Mrs. Shiwbodh was "likely looking at a [ankle] fusion at some point in the future."  Ex. 11K, p. 2.

48.     Looking at Mrs. Shiwbodh's medical history, the nature of her ankle injury (which included ankle instability, a peroneal tendon tear, and ankle impingement syndrome – all consistent

with trauma), and the timeframe and presentation of her symptoms, Dr. Ferrucci also opined that the plane crash was "more likely than not" the cause of her persisting ankle pain. Ex. 11T (Ferrucci Dep.), pp. 34-35.[5] **"Her constellation of symptoms," Dr. Ferrucci explained, "and MRI findings, exam findings and surgical findings, are all post-traumatic symptoms and findings."** *Id.*, p. 80.

49.     Mrs. Shiwbodh treated with Dr. Galante four more times from January 2016 through February 2017.[6] Ex. 2FF; Ex. 2GG; Ex. 2II; and Ex. 2JJ.  She continued to complain of headaches, post-traumatic anxiety, depression, insomnia, neck pain, back pain, and right ankle and foot pain, dizziness, and intermittent numbing, tingling or pain throughout her right side. *Id.*  Her limp worsened considerably and by May 25, 2016, Mrs. Shiwbodh could no longer walk without the assistance of a cane.  Ex. 2FF.

50.     On April 12, 2016, Dr. Kramer, the, ordered a new MRI on Mrs. Shiwbodh's spine. Ex. 13F.  He recommended an L3-L4 and L4-L5 discogram and additional pain medication. Ex. 13F and Ex. 13G.

51.     On September 22, 2016, Dr. Ferrucci examined Mrs. Shiwbodh and became concerned that X-Rays were not picking up an injury in her right knee, and so ordered an MRI. Ex. 11L, p. 2.  As Dr. Ferrucci later explained, the condition of Mrs. Shiwbodh's right ankle "was definitely causing a limp … which oftentimes with ankle pain and decreased range of motion with the ankle, goes on to affect the next adjacent joint, which in her case was the knee." Ex. 11T (Ferrucci Dep.), pp 82-83.

---

[5]     In reaching this opinion, Dr. Ferrucci ruled out other causes, such as venous stenosis, hypothyroidism, and diabetes.  Ex. 11T (Ferrucci Dep.), pp. 80-81.

[6]     Though Mrs. Shiwbodh testified that she continues to see Dr. Galante to this day, no records after February 2017 were admitted in this case.  Tr. 69; Ex. 2JJ.

52.     The MRI revealed significant Grade 4 chondromalacia patella (degeneration of the cartridge in the kneecap) which had not previously been detected.  Ex. 11T (Ferrucci Dep.), pp. 39-40, 45-46.   Dr. Ferrucci testified that "Grade 4" is the most significant grade that doctors can assign to such an injury, and that a Grade 4 chondromalacia such as Mrs. Shiwbodh's nearly always stems from a traumatic event.  *Id*., pp. 45-48.  "To develop Grade 4 changes without any reported trauma is very uncommon," he opined.  "I have not seen it in my professional career.  [And] I have not read about it."  *Id.*, p. 47.  **Dr. Ferrucci therefore concluded that "a traumatic event was the cause of . . . that much damage developing [in Mrs. Shiwbodh's knee] that quickly."**  *Id.*, pp. 47-48.

53.     Dr. Ferrucci also noted syndesmosis (or widening) in her ankle joint, which is also almost always related to trauma and would be consistent with a "higher energy fall impact."  *Id.,* pp. 42-43.

54.     Tying the two injuries together, Dr. Ferrucci explained at trial: **"It is more likely than not that the ankle affected the knee in a negative way and made whatever pain was in the knee more significant."**  Ex. 11T (Ferrucci Dep.), p. 83.

55.     On October 31, 2016, Dr. Ferrucci treated Mrs. Shiwbodh with an image-guided injection of Lidocaine and Kenalog in her right ankle.  Ex. 11N; Ex. 11T (Ferrucci Dep.), p. 48.  This injection provided only temporary relief.  Ex. 11O, p. 1; Tr. 74-75.

56.     In a follow-up visit on February 13, 2017, Dr. Ferrucci noted that Mrs. Shiwbodh's ankle and knee pain were both becoming more severe, and that she had developed a Baker's cyst (a cyst behind the knee joint related to degeneration) in her knee.  Ex. 11O, p. 1; Ex. 11T (Ferrucci Dep.), p. 50.  Due to the arthritis and pain in both joints, Dr. Ferrucci noted that "both [the knee and ankle] are going to require surgical intervention" at some point in the future.  Ex. 11O, p. 2.

He continues to believe this will be the case within a reasonable degree of medical probability. Ex. 11T (Ferrucci Dep.), p. 54

57.     Dr. Ferrucci concluded his visit of February 13, 2017, with an injection of Lidocaine in Mrs. Shiwbodh's knee.  *Id.*  Like those before it, this injection provided only temporary relief.  Tr. 74-75

58.     On April 17, 2017, Dr. Ferrucci treated Mrs. Shiwbodh and concluded that a right ankle fusion was likely Mrs. Shiwbodh's "next step."  Ex. 11P, p. 2.  He also gave her another Lidocaine injection in her right knee that day. *Id.*  On August 13, 2017, Dr. Ferrucci gave Mrs. Shiwbodh a second image-guided injection of Lidocaine and Kenalog.  Ex. 11R.

59.     Mrs. Shiwbodh testified that she continues to have daily headaches lasting more than 4 hours a day, some with a pain level of 10.  Ex. 15, p. 1; Tr. 63-64, 71, 85, 128.  She remains depressed.  Tr. 84.  Her back, knee, ankle and foot pain are continuous and has worsened since the symptoms first emerged in 2011, and she continues to take pain medication and to use a cane or other assistance to walk.  Tr. 70-72, 79-81, 85, 128.  She also testified that she continues to suffer from dizziness and insomnia and to take sleep medication.  Tr. 46-47, 73-74.  She also suffers from numbness on her right side.  Tr. 78, 81.  As her husband recounted: "She's got pain and pain all the time … And the bad part is she can't get better.  We don't want to see her live this way.  It's not a good way."  Tr. 126.

60.     As a result of these ailments, Mrs. Shiwbodh no longer works, cooks, cleans, visits family, socializes, or goes places; and she cannot take care of her home. Tr. 84, 126-27.  Her

daughter performs many of these tasks instead.  Tr. 126    Mrs. Shiwbodh complains of pain every

day.  Tr. 127.[7]

### IV.    LOSS OF EMPLOYMENT AT COVIDIEN

61.    At the time of her injury, Mrs. Shiwbodh was employed with Covidien (formerly

U.S. Surgical), a medical device manufacturer, at its North Haven, Connecticut facility as an

assembler. Tr. 13.  Mrs. Shiwbodh attended school in Guyana, but only through the equivalent of

primary school; she failed the exams that would have allowed her to continue into middle school

and high school.  Tr. 178.   She has no educational background beyond the age of 12 and no

vocational training.  Tr. 11-12, 56, 177-78.   She was therefore only capable of performing

unskilled, manual work prior to the plane crash. Tr. 177-180.

62.    She had worked at Covidien since she was 18 (roughly 23 years), and she enjoyed

working there.  Tr. 13, 67.  Mrs. Shiwbodh testified that she liked both her colleagues and what

she was doing.  Tr. 67.  She had no intention of leaving her job at Covidien for other employment.

Tr. 75-76.  Her plan was to continue working there until her retirement.  Tr. 76.

63.    Her job as an assembler required moderate walking, standing, sitting, bending,

reaching and lifting.  Tr. 14-16.

64.    As a result of the injuries that she sustained in the plane crash of July 30, 2011,

Mrs. Shiwbodh was disabled from work between July 30, 2011 (the date of the crash) and the first

week of January 2012. Ex. 2S, p. 3.

65.    Mrs. Shiwbodh attempted to return to Covidien on light duty work in January 2012,

but was in persistent pain – particularly from her right ankle, right knee, and lower back.  Ex. 2S,

---

[7]    She also has scars on her scalp (where she had the stitches) and her ankle (from the multiple
surgeries).  Tr. 88; Ex. 20B.

p. 3.  After several days back at work, she again took a leave from work related to her injury.  Tr. 54-55.  She has not returned to work since.  *Id.*

66.      Due to the conditions she developed following the 2011 plane crash, Mrs. Shiwbodh is functionally limited.  Tr. 183.  She is not able to walk more than 5 minutes at a time; not able to sit more than 10 minutes without getting up (due to back pain); has a lack of balance; is unable to lift objects weighing 5 pounds or more; and experiences pain while doing reaching activities, including driving.  Tr. 183-84; Ex. 21B, p. 6.  Were she to find employment, it is likely that she would need to miss at least 4 work days per month due to her chronic conditions, according to Dr. Galante, her primary care physician.  Tr. 184.

67.      Given her functional limitations, she is presently incapable of performing unskilled work, and has been since these limitations developed.  Tr. 182, 184-86.[8]

68.      Mrs. Shiwbodh's doctors agree that she is unable to work given her injuries.  *See* Ex. 2R (Galante); Ex. 5F (Connair); Ex. 8H (Sella); Ex. 10B (Hasbani).

69.      And on July 6, 2013, the Social Security Administration found that Mrs. Shiwbodh was disabled as of the date of the date of the plane crash – July 30, 2011. Tr. 173-74.  Even with disability benefits, the Shiwbodhs lost the home in which they were living, as well as a rental home that they owned before the plane crash occurred.  Tr. 68, 122-24.  "We couldn't afford the mortgage so the bank foreclose on it."  Tr. 123.

---

[8]      Mrs. Shiwbodh's most recent orthopedist, Dr. Ferrucci, believes she is incapable of doing anything other than sedentary work.  Ex. 11T (Ferrucci Dep.), p. 84.  In Mr. Joy's opinion, however, Mrs. Shiwbodh's lack of education precludes her from performing most unskilled sedentary employment, such as a receptionist.  Tr. 184.  Occupations such as a parking lot attendant or hand-packer are also beyond her functional limitations.  Tr. 184-85.

## V.    DAMAGES

70.    The Court in this case is sitting as trier of fact and may award damages just as a jury would hearing this case.  The components of damages that may be awarded, generally, are economic damages for past and future medical expenses and for past lost income and future lost earning capacity, and non-economic damages for pain and suffering.

### A.    Economic Damages – Medical Expenses

71.    The evidence before the Court includes composite exhibits of the medical bills incurred by Mrs. Shiwbodh for the medical treatment described above.  Exs. 17A-17M.  A chart linking the medical records in evidence that correspond to those bills is included in the attached Appendix of Medical Bills.  In past medical expenses, Mrs. Shiwbodh has incurred a total of **$194,185.73**.[9]

72.    Mrs. Shiwbodh's future medical needs include ankle fusion or replacement surgery, according to Dr. Ferrucci.  Ex. 11T (Ferrucci Dep.), p. 54-55; Ex. 11P, p. 2.   The costs of such surgery are estimated to be as follows:

| | |
|---|---|
| Implant cost: | $    4,000 |
| Surgeon's fee: | $    3,000 |
| Anesthesia: | $    2,000 |
| Facility use charge: | $    2,800 |
| Rehabilitation fee: | |
| $200-$400/day x 2-4 weeks:  average: | $    6,300 |
| Physical therapy: | |
| $80-$90 per visit x 3 times per week x | |
| 6 weeks:  average: | $    1,530 |
| Office visit x 1 per year: | $       125 |
| Post-operative casts, cam boot walker, | |
| Arizona brace, ankle brace: | $    1,740 |
| | |
| TOTAL: | $   21,495 |

---

[9]    Plaintiff acknowledges that, prior to the entry of a Final Judgment in this matter, the Court should receive evidence as to the total amount of collateral sources (e.g., insurance) which have been paid for Mrs. Shiwbodh's benefit.  *See* Con. Gen. Stat. § 52-225a.

Ex. 11T (Ferrucci Dep.), pp. 54-59.

73.     Mr. Shiwbodh's total medical expenses (past and future) are thus **$215,680**.

### B.     Economic Damages – Lost Income

74.     Prior to the July 2011 plane crash, Mrs. Shiwbodh was an assembler of medical surgical products for Covidien in North Haven, Connecticut.  She had worked at this job for her entire adult life.  She earned an average of $39,880 plus benefits over the last three full years of her employment.  Ex. 21B, p.8; Tr. 186.  She also received ancillary employment benefits, such as health care and 401K contributions.  Tr. 196-97; Ex. 21B, pp. 10-13.

75.     Jeffrey Joy, a rehabilitation counselor with a doctorate in health-related sciences, testified as the plaintiff's rehabilitation and damages expert.  Tr. 163-67.  Mr. Joy calculated Mrs. Shiwbodh's lost wages and benefits through the date of trial and determined her past lost income to be **$316,200**.[10]  Tr. 198.

76.     Mr. Joy also calculated Mrs. Shiwbodh's *future* lost earning capacity.  Mrs. Shiwbodh had an expected retirement age of between 55 and 67, with a best estimate of retiring at

---

[10]     In Exhibit 21C, Mr. Joy calculated the lost income through the date of trial to be $321,838. In his testimony, he testified that $5,638 should be deducted from that figure because Mrs. Shiwbodh had been paid that amount for the period of time she attempted to return to work in 2012.  Tr. 198.

age 64. Tr. 187-89.[11]  Reduced to present value, future her lost earnings are between $352,860 (assuming retirement at age 55) and $866,655 (assuming retirement at age 67).  Ex. 21C.  Using his best estimated retirement age of 64, Mr. Joy calculated Mrs. Shiwbodh's future lost earning capacity to be **$737,344**. Tr. 201-2.

77.    Mr. Shiwbodh's total lost earnings (past and future) are thus **$1,059,182**.

78.    Defendant has contended that Mrs. Shiwbodh failed to mitigate her damages by returning to her employment at Covidien or seeking alternative employment.  Defendant failed to plead failure to mitigate as an affirmative defense in its Answer.  "Failure to mitigate damages is an affirmative defense and therefore must be pleaded.  Fed.R.Civ.P. 8(c).  The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver."  *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n.2 (2d Cir. 1988).

79.    Regardless, plaintiff's expert, Jeffrey Joy testified that, based on his experience in this region as a vocational rehabilitation consultant, Mrs. Shiwbodh is unable to sustain any competitive work within the local labor market.  As Mr. Joy put it: "I believe, based upon my findings through the data in my report, that she's incapable of performing any unskilled work that

---

[11]    Mrs. Shiwbodh was born August 13, 1970.  She is a 47.34-year-old female.  According to the U.S. Life Expectancy Tables, her life expectancy is 33.25 years (or age 80.5).  Mr. Joy testified that a retirement age of 67 was based on the full retirement age as defined by the Social Security Administration for purposes of receiving social security benefits, and that a retirement age of 55 was based on his review of published statistics of the work life expectancy of someone with Mrs. Shiwbodh's level of education. Tr. 187-88.  Mr. Joy opined that he estimated that a retirement age of 64 for Mrs. Shiwbodh was reasonable based upon her record of continuous employment with one company, which he characterized as "pretty remarkable;" the quality of the company she worked for, Covidien; her reported work ethic, which was strong; and the fact that she was one of only four employees that the company retained (down from 20) when it partly mechanized its manufacturing process – evidence that she was "obviously … a good worker."  Tr. 188-89.

would be within her function[al] limitations." Tr. 182.  Defendant did not present the testimony of a vocational rehabilitation expert.

80.     In addition, the following facts are indicative that Mrs. Shiwbodh is a person who sincerely wanted to work, not a malingerer: she had worked for her entire adult life since shortly after she arrived in the United States; she had been employed for approximately 23 years by the same company (Covidien); she was earning a good salary, plus benefits, from a quality company; her reported work ethic was strong; she was one of only four employees that the company retained (down from 20) when it partly mechanized its manufacturing process (evidence that she was a good worker). Tr. 91, 189, 219-21. Moreover, the Shiwbodh family has suffered financially without her income.  As Mrs. Shiwbodh's husbanded testified, the couple lost two homes (their residence and a house that they rented) as a result of Mrs. Shiwbodh's injuries.   "We bought [a house] for $370,000, we paid for the house and we lost it … [b]ecause both of us were in and out of work."  He continued: "We moved back to the rental …. [but] we couldn't afford that one either …. We wasn't working." Tr. 122-24.

### C.    Non-Economic Damages – "Pain and Suffering"

81.     Finally, a plaintiff who is injured by the negligence of another is entitled to be compensated for all physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and permanent impairment or loss of function that she proves by a fair preponderance of the evidence to have been proximately caused by the accident.   Connecticut juries are instructed: "As far as money can compensate the plaintiff for such injuries and their consequences, you must award a fair, just, and reasonable sum. You simply have to use your own good judgment in awarding damages in this category. You should consider the nature and duration

of any pain and suffering that you find." *See Connecticut Judicial Branch Civil Jury Instructions: 3.4-1 Damages-General*.

82.    Since the July 2011 plane crash, Mrs. Shiwbodh has been to medical providers approximately 118 times, and to physical therapists approximately 70 times. She has received at least half a dozen injections (to her spine, right knee and right ankle) during that period of time. She has undergone three separate surgeries on her right ankle area (and may need an additional surgery). This medical history both shows the pervasiveness and extent of her pain, as well as her persistence in trying to recover from her injuries.

83.    Mrs. Shiwbodh has gone from living a life without chronic pain and with a job that she both enjoyed to a life of chronic pain in various parts of her body, physical limitations and repeated needs for medical treatment. Mrs. Shiwbodh has experienced this pain and suffering for roughly 6½ years from the date of the accident to the time of trial and is likely to continue to experience for some period of time into the future. As her husband testified: "She's got pain and pain all the time … And the bad part is she can't get better. We don't want to see her live this way. It's not a good way." Tr. 126.

84.    The Court had the opportunity to observe the testimony of both Mrs. Shiwbodh and her husband and finds their testimony to be credible when it comes to their descriptions of the pain and suffering Mrs. Shiwbodh has experienced.

85.    The Court determines that a reasonable award for the past pain and suffering that has been experienced by Mrs. Shiwbodh and for her future pain and suffering is **[$600,000]**. The amount is in accord with the total amount of her medical expenses, being a rough multiple of 3 times her medical expenses. It is also reasonable in light of the length of time she has experienced the pain and suffering (averaging out to under $100,000 per year for the 6½ years leading up to

23

the trial) and takes into account the expected diminishment in her pain and suffering as the events at issue recede further into the past and the benefits of her ongoing medical treatment.

## **CONCLUSION**

Plaintiff respectfully requests that the Court enter the above proposed findings of fact and make the above-requested damages award in this matter.  In light of the passage of time and the volume of medical records involved, Plaintiff's counsel is available to conduct the equivalent of a closing argument if the Court so wishes.

Respectfully submitted,

JACOBS & JACOBS
700 State Street
New Haven, CT 06511
Tel:  203.777.2300

By:____*s/ Steven D. Jacobs*_____
        Steven D. Jacobs (CT00409)
        E-mail: steve@jacobs-jacobs.com

COLSON HICKS EDISON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel:  305.476.7400

By:___*Curtis Miner*_____
        Curtis Miner (*pro hac vice*)
        E-mail: curt@colson.com

*Counsel for Plaintiff Indrawatie Shiwbodh*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 26, 2018, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, which will send transmissions of Notices of

Electronic Filing to the below counsel of record:

Vincent M. Marino
COHEN AND WOLF, P.C.
1115 Broad Street
Bridgeport, CT 06604
Tel: 203.368.0211
E-mail: vmarino@cohenandwolf.com

John Maggio
CONDON & FORSYTH LLP
7 Times Square
New York, NY 10036
Tel: 212.490.9100
E-mail: jmaggio@condonlaw.com

*Counsel for Defendant Caribbean Airlines Limited*

s/ *Curtis B. Miner* _____
Curtis B. Miner (*pro hac vice*)

25