UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| INDRAWATIE SHIWBODH,<br><br>    Plaintiff,<br><br>v.<br><br>CARIBBEAN AIRLINES LIMITED,<br><br>    Defendants. | No. 3:12-CV-01706 (MPS) |

## RULING ON MOTION TO AMEND JUDGMENT

Plaintiff Indrawatie Shiwbodh brought this action against defendant Caribbean Airlines Limited for injuries she allegedly suffered in the July 30, 2011 crash of Caribbean Airlines Flight BW523. After the case returned to this Court following consolidated multi-district litigation proceedings concerning the plane crash in the United States District Court for the Eastern District of New York, the parties agreed that the sole remaining disputes between them were whether the crash proximately caused the plaintiff's injuries and the amount of damages to which the plaintiff was entitled. To decide these issues, I held a three-day bench trial from December 11th to December 13th, 2017. I subsequently set my forth my findings of fact and conclusions of law, Fed. R. Civ. P. 52(a)(1), in which I awarded the plaintiff $68,093.04 in economic damages and $204,279.12 for pain and suffering. (*See* ECF No. 71 ("Memorandum of Decision") at 1.) Now before me is the plaintiff's motion to amend these findings. (ECF No. 75.) The plaintiff argues that the damages she was awarded did not include certain medical charges and lost wages to which she was entitled. For the reasons set forth below, the plaintiff's motion is granted in part and denied in part.

1

## I. Background[1]

Following a three-day bench trial, I issued a Memorandum of Decision on March 27, 2018, awarding the plaintiff various damages based upon injuries proximately caused by the July 30, 2011 plane crash. In particular, I concluded that "the defendant proximately caused the following injuries to the plaintiff: (1) her ankle injury through July 29, 2015; (2) her knee injury through September of 2012; (3) her back injury through October of 2011; and (4) her head injury through May of 2012. (Memorandum of Decision at 1.) I also found "that the plaintiff [was] entitled to $68,093.04 in economic damages and $204,279.12 for pain and suffering, for a total judgment amount of $272,372.16." (*Id.*)

The plaintiff's medical expenses constituted $55,690.43 of her economic damages. (*Id.* at 36.) These damages were lower than they otherwise would have been, however, due to the plaintiff's failure "to present [these damages] in a comprehensible manner." (*Id.* at 33.) In particular, the plaintiff "merely included a series of medical bills in the record" and "did not present any testimony linking these various bills to specific medical treatments." (*Id.* at 33-34.) As a result of this failure, I determined that I would "award the plaintiff damages for only those medical bills admitted into evidence that contain[ed]: (1) a corresponding treatment report or other report reflecting the plaintiff's treatment; (2) a clear indication of which provider issued the medical bill; (3) a clear statement of the charges incurred; and (4) the date of the treatment." (*Id.* at 34.) Without such information, I could not find that the plaintiff had carried her burden to prove by a preponderance of the evidence that the lists of otherwise unexplained charges included in the trial record were actually linked to the plaintiff's compensable injuries and, thus,

---

[1] I presume the parties' familiarity with the facts of this proceeding and therefore only briefly describe the facts relevant to this ruling.

constituted recoverable damages. *See S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F. Supp. 1014, 1030 (S.D.N.Y. 1984) ("It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered . . . ."). I listed the medical bills in the trial record that met this standard in a table in my Memorandum of Decision. (*Id.* at 35-36.)

The remainder of the plaintiff's economic damages stemmed from her lost earnings due to her inability to work after the plane crash. (*Id.* at 40.) These lost earnings, however, were limited to the period in which the defendant conceded it had proximately caused all of the plaintiff's injuries—i.e., from the plane crash on July 30, 2011 to October 31, 2011. (*Id.*) I limited the plaintiff's damages in this way due to the testimony of plaintiff's expert, Dr. Jeffrey Joy, who testified that he could not speak to—and was not asked to look into—the impact of each of the plaintiff's individual injuries on her inability to work. (*Id.* at 38-39.) The plaintiff did not present any other expert testimony attesting to the effects of the plaintiff's individual injuries on her ability to work during the relevant periods described above.

The plaintiff filed her motion to amend the judgment on April 24, 2018. (ECF No. 75).

**II.  Discussion**

**a. Legal Standard**

Federal Rule of Civil Procedure 52(b) ("Rule 52(b)") provides in relevant part: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." The purpose of Rule 52(b) "is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence." *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp. 167, 169 (S.D.N.Y. 1993). A

Rule 52(b) motions is a limited vehicle, however, and it may not be used to "introduce evidence that was available at trial but was not proffered, relitigate old issues, . . . [or to] advance new theories" based on "the acuity of hindsight." *Id.* (internal quotation marks and citation omitted.) "Nor does the Rule provide an avenue for a party merely ruing an oversight of its own in failing to introduce foreseeably relevant evidence." *Soberman v. Groff Studios Corp.*, 2000 WL 1253211 *1 (S.D.N.Y. Sep. 5, 2000).

   b. Analysis

The plaintiff makes two main arguments in her motion to amend the judgment. First, she contends that the Court should have included various medical expenses in calculating her medical damages. (ECF No. 75 at 3.) Second, she argues that the Court erred in calculating her lost earnings. (*Id.* at 5.) I address these contentions in turn.

   i. Medical Expenses

The plaintiff contends that the Court should amend its calculation of her medical damages to reflect evidence of various medical expenses contained in the trial record. The first of these medical expenses consists, according to the plaintiff, of expenses she incurred in relation to her second ankle surgery, which was performed by Dr. Enzo Sella on August 21, 2013.[2] (*Id.* at 3.) In support of this contention, the plaintiff points to a list of charges in the trial record dated August 21, 2013, in addition to those previously awarded. (*Id.* at 3 (citing Trial Exhibit ("Tr. Ex.") 17J at 1-2)).)[3] While these charges – like so many submitted by the plaintiff – are far from

---

[2] The Court awarded the plaintiff $2,100 for that surgery based upon the evidence submitted at trial. (Memorandum of Decision at 35.)

[3] In the Court's trial binder of exhibits, which reflects what was admitted into evidence, the list of additional charges from August 21, 2013 appears on the second and third pages of Exhibit 17 J, not pages 1 and 2.

4

self-explanatory,[4] they do correspond to the date of Dr. Sella's surgery, for which there is a treatment report in the trial record. (Tr. Ex. 8C). That report indicates that the surgery was performed at Yale New Haven Hospital (*id.*), the letterhead of which appears at the top of the list of charges shown on the second page of Exhibit 17J. Further, the list includes references, with corresponding charges, to "sponge super sterile," "anesthesia," and "recovery time," which confirm that these charges related to surgery. Finally, there is no suggestion from the documents that the charges set forth in Exhibit 17J from Yale New Haven Hospital are duplicative of the $2,100 shown on page 4 of Exhibit 17G (apparently from Dr. Sella's medical office), which the Court already awarded in its ruling. (See ECF No. 71 at 35.) Thus, because there is a "corresponding treatment report," a clear indication that Yale New Haven Hospital was involved in that treatment and issued the medical bill, a clear statement of the charges, and an indication in the record of the date of treatment, the Court will amend its finding of damages with respect to Dr. Sella's August 21, 2013 surgery to include the charges shown on the two-page medical bill from Yale New Haven Hospital included at the second and third pages of Trial Exhibit 17J. The total amount shown on these pages, which will be added to the judgment, is $12,827.62.

I do not agree, however, with the plaintiff's contention that the Court erred in calculating her damages for her third ankle surgery on July 29, 2015, which was performed by Dr. Allen Ferrucci. (ECF No. 75 at 3.) The Court awarded the plaintiff $17,430.00 in medical damages for

---

[4] The plaintiff submitted an appendix to her Rule 52(b) motion for the first time on May 17, 2018, two days after the defendant filed its brief opposing the motion. The appendix sets forth a reasonably clear listing of each charge, the date, the corresponding trial exhibit, the procedure or treatment involved, the provider, and the particular injury of the plaintiff for which the treatment was provided. This appendix was not provided at the time of trial and was not introduced into evidence, and its late submission has effectively deprived the defendant of an opportunity to respond to it.

that procedure based upon the evidence submitted at trial. (Memorandum of Decision at 35.) The plaintiff now seeks additional amounts for the same procedure, citing bills in the trial record that list the date, "7/29/15," a brief descriptor of some sort of medical procedure, and an amount. (*See* Tr. Ex. 17G at 16-18.) The problem with these documents, however, is that they appear to duplicate, at least to some degree, amounts the Court already awarded, and in any event the plaintiff offers (and offered at trial) no explanation of these bills to show that they do not duplicate or overlap with amounts included in the $17,430 figure. The $17,430 was based on a document in Exhibit 17G with the heading "Connecticut Orthopaedic Specialists", the date of July 29, 2015, and a list of charges for specifically described procedures, such as "repair lower leg tendons," "ankle arthroscopy," "release of lower leg tendon," "repair of ankle ligament," and "repair of foot tendon." (Ex. 17G, p. 8). The documents to which the plaintiff now draws the Court's attention – which are at pages 16-18 of Trial Exhibit G – carry the heading "Conn. Ortho. Spec.," which, absent any other explanation provided by the plaintiff, indicates that these documents reflect charges *by the same provider*. These documents list charges corresponding to "7/29/15" that describe identical or nearly identical procedures to those shown on page 8, i.e., "arthroscopy, ankle", "repair, dislocating peroneal," "repair, primary, disrupted L," and "repair, tendon, flexor, foot." The charges on these documents, however, differ in amount from those set forth on page 8. It may well be that there is an innocent explanation for this, such as that the latter documents reflect hospital charges incurred by Connecticut Orthopaedic Specialists, but that is just speculation.[5] Again, it was for the plaintiff to introduce evidence that each of the

---

[5] The plaintiff urges the Court to draw this speculative inference from the handwritten notation "facility" on pages sixteen through eighteen. Without any evidence as to who made the notation, when, and under what circumstances, however, I decline to do so.

charges represents recoverable damages, which includes showing that they do not duplicate amounts already awarded. She has failed to do so in this instance.

Next, the plaintiff contends that the Court should have included various medical costs associated with Dr. Martin Hasenfeld's treatment of her back through October 31, 2011.[6] (ECF No. 75 at 4.) Her argument relies upon two pieces of evidence—Trial Exhibits 17C and 17K. (*Id.*). The plaintiff has a fair point with respect to Trial Exhibit 17C, which contains three bills (other than the one the Court included in its Memorandum of Decision) that identify Dr. Hasenfeld as the provider, describe the treatment he provided, and correspond directly with treatment reports in the record. (*Compare* Tr. Ex. 4A-C (documenting Dr. Hasenfeld's treatment of the plaintiff on September 27, October 3, and October 18 of 2011) *with* Tr. Ex. 17C at 1-2 (containing corresponding bills for treatment provided by Dr. Hasenfeld on those three dates).) I therefore conclude that the plaintiff is entitled to medical damages for her expenses incurred from those treatments, which amount to $1,375. (*See* Tr. Ex. 17C at 1-2.)

The same cannot be said for the plaintiff's argument concerning Trial Exhibit 17K. As an initial matter, the twin $2,400 charges the plaintiff identifies in the appendix to her motion (ECF No. 77-1 at 5) do not appear to correspond to any of the charges in Trial Exhibit 17K, either by dollar amount or by date. In any event, there is only one charge in that exhibit dated before November 1, 2011. This charge reads as follows: "10/31/11 CIGNA HP ADJ 1919.50CR." (*See* Tr. Ex. 17K at 2.) Such a charge (if it even is a charge) obviously does not meet the standard described in the Court's Memorandum of Decision. The plaintiff notes that

---

[6] The Court awarded the plaintiff $900.00 in total for Dr. Hasenfeld's treatment based upon a bill corresponding to a treatment report contained in Trial Exhibit 4D. (Memorandum of Decision at 35.)

the defendant, which also pointed out the absence of the charges in question (*see* ECF No. 76 at 5-6), "appears to cite to a version of [Trial Exhibit 17K] that is missing its first page, as the complete exhibit plainly contains an entry dated October 28, 2011." (ECF No. 81 at 6.) The plaintiff "accordingly asks the Court to enter the appropriate ruling based on the copy of Trial Exhibit 17K that was admitted into evidence as reflected in the Court's file." (*Id.*) Since, as noted above, the version of Trial Exhibit 17K admitted into evidence does not contain the page or charges the plaintiff references, I deny her request to add them to her judgment.

The plaintiff also argues that the Court should amend its judgment to provide her with medical damages corresponding to the costs of treatment she received from Dr. Lorenzo S. Galante.[7] (ECF No. 75 at 4.) She points to the entry "(Pr: LSG Fac:)" next to some of the charges on a list in the trial record and asserts—for the first time—that "LSG" are Dr. Galante's initials and that "Pr" stands for "provider." (*Id.* (citing Tr. Ex. 17A)). This may well be a plausible explanation for these entries, but the time to offer such an explanation was at trial or, at the latest, in post-trial briefing—not on a Rule 52(b) motion. In any event, these records do not provide "a clear indication of which provider issued the medical bill." (Memorandum of Decision at 34.) Even if they did, the bills would still fail to meet the Court's standard given that they appear to list three dates for each charge. (*See* Tr. Ex. 17A.) Once again, there may be a reasonable explanation for this, but if so, the plaintiff has not provided it. I decline to amend the judgment to include the charges shown on Exhibit 17A.

---

[7] The Court declined to award the plaintiff any damages for the costs of her treatment with Dr. Galante due to her failure to "provide enough information linking the bills in evidence to [his] treatment reports." (Memorandum of Decision at 34 n. 11.)

Finally, the plaintiff contends that the Court inadvertently omitted $165 from its award for costs associated with her treatment by Dr. Adam Mednick.[8] I agree. (*See* Tr. Ex. 17E (listing $2,992.00 in expenses associated with treatment from Dr. Mednick before June 1, 2012).) The plaintiff is therefore entitled to an additional $165 in damages.

I therefore conclude that the plaintiff is entitled to an additional $14,367.62 in economic damages for her medical expenses.

### ii. Lost Earnings

The plaintiff makes two arguments concerning the Court's calculation of her lost earnings. First, she contends that she "is entitled to recover lost wages for the period of time she remained employed at Covidien [i.e., until May 23, 2012 (ECF No. 75 at 6 n. 5)] but, due to her ankle and knee injuries, was unfit to work there." (ECF No. 75 at 7.) In support of this argument, she notes the Court's citation to Dr. Ferrucci's testimony "that the plaintiff was still able to perform sedentary work despite her ankle and knee injuries" (Memorandum of Decision at 39 (citing Tr. Ex. 11S at 83-85)). Since her employment at Covidien did not involve sedentary work, she avers, she should be entitled to lost wages for the period of work she missed there. (ECF No. 75 at 6.) But Dr. Ferrucci testified that the plaintiff's ankle and knee injuries confined her to sedentary work *only since the time of her third ankle surgery.* (*See* Tr. Ex. 11S at 84 (Q: "And since the time of [the plaintiff's third ankle surgery on July 29, 2015], do you have an opinion, based upon a reasonable degree of medical probability, as to whether since that time, she had a work capacity?" A: . . . "[I]t was documented that I said sedentary only. . . . I don't

---

[8] The Court awarded the plaintiff $2,827.00 for the treatment she received from Dr. Mednick. (*See* Memorandum of Decision at 5.)

9

think she could do anything more than a sedentary position.").)[9] Dr. Ferrucci offered no opinion on the plaintiff's ability to work some three years before he began treating her, and the plaintiff failed to present any evidence suggesting that her ankle and knee injuries alone prevented her from returning to Covidien prior to her termination from the company.

The plaintiff also argues that she is entitled to lost wages due for periods of "six to eight" weeks during her recoveries from her three ankle surgeries due to what the plaintiff describes as testimony from Dr. Ferrucci noting that she would be unable to perform even sedentary work during these periods. (*See* ECF No. 75 at 7 (citing Tr. Ex. 11S at 84.).) There are multiple problems with this argument. As an initial matter, Dr. Ferrucci's testimony does not support it. The question and response the plaintiff cites are as follows:

> Q: And since the time of [the plaintiff's] ankle surgery, do you have an opinion based upon a reasonable degree of medical probability, as to whether since that time, she has had a work capacity?
>
> A: Sedentary . . . only would have been—it was documented that I said sedentary only. I would not—from oftentimes, six to eight weeks after surgery, sedentary would have been appropriate for her, through today. I don't think she could do anything more than a sedentary position.

(Tr. Ex. 11S at 84.) Dr. Ferrucci's response suggests that the plaintiff was capable of performing sedentary work for six to eight weeks after her ankle surgeries and, in any event, he does not say she was incapable of working at all during those periods. In addition, Dr. Joy concluded that the plaintiff had suffered from near total disability since the plane crash due to the combined effect

---

[9] Dr. Ferrucci also testified in response to a question asking him whether he had an opinion about the plaintiff's work capacity when she first visited him on April 6, 2015 that: "I would have said from the beginning that sedentary work was all that [the plaintiff would] be capable of doing, but it's not documented in any of the notes." (Tr. Ex. 11S at 84.) Even if one charitably construed this as an expert opinion stating that the plaintiff's knee and ankle injuries prevented her from performing anything other than sedentary work after that time, it would still not cast any light on the plaintiff's work capacity in early 2012.

of her injuries (*see* Tr. Ex. 21B at 12-13 (averring that plaintiff was entitled to lost earning capacity for all of the time since the plane crash minus the wages she earned in a failed work attempt in February, 2012)); he also noted that the Social Security Administration had determined that the plaintiff was disabled in 2012. (*Id.* at 13.) As such, it seems doubtful that the plaintiff would have been able to perform any sort of work after her ankle surgeries in late 2012, 2013, and 2015 but for her recovery from these surgeries. In other words, even assuming the injuries the Court found to be compensable would have prevented her from working during these intervals, she failed to prove that those injuries—as opposed to other, non-compensable injuries or conditions—were the "but-for" cause of her inability to work during these periods.

I therefore reject the plaintiff's argument that she is entitled to greater damages for lost earnings capacity. In light of this disposition, I conclude that the plaintiff is entitled to an extra $14,367.62 in economic damages, bringing her total economic damages award to **$82,460.66**. Since her award for pain and suffering consisted of triple the amount of her economic damages (Memorandum of Decision at 41), I amend the plaintiff's pain and suffering award to **$247,381.98**.

### III. Conclusion

For the foregoing reasons, the plaintiff's motion to amend the judgment (ECF No. 75) is hereby GRANTED IN PART AND DENIED IN PART. The Court amends the judgment in favor of the plaintiff to **$82,460.66** in economic damages and **$247,381.98** for pain and suffering, leading to a total judgment amount of **$329,842.64**.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
July 3, 2018